## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **YOLANDA DAVIS and TENESHIA BANKSTON,** Individually, and on behalf of other similarly situated, | : : : | **CIVIL ACTION NO.:** |
| Plaintiff, | : : | |
| vs. | : : | |
| **DYNATA, LLC,** Defendant. | : : : | **AUGUST 23, 2022** |

### COLLECTIVE AND CLASS ACTION
### COMPLAINT AND JURY DEMAND

Plaintiffs, YOLANDA DAVIS and TENESHIA BANKSTON ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant DYNATA, LLC ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq.*, and for common law breach of contract and unjust enrichment.

2.      According to their website, Defendant is "the world's largest first-party data platform,"[1] providing services to "thousands of companies."

3.      Dynata employs hourly employs to administer over-the-phone surveys for companies on a wide range of matters.

---

[1] *See*, https://www.dynata.com/ (last visited Aug. 15, 2022).

4.      Defendant's website boasts that they complete more than 100 million surveys each year. *See id.*

5.      In order to conduct these scripted phone surveys, Defendant employs hourly remote Call Center Survey Agents (CCSAs) to make outbound calls to citizens across the United States from their home offices.

6.      Defendant classifies some (but not all) of the CCSAs that perform these scripted surveys as independent contractors.

7.      Defendant relies on a variety of staffing companies and third-party websites, for example "Shift Smart," to supply them with CCSAs who perform their scripted surveys. In other instances, Defendant directly hires and employs CCSAs by using job postings and position descriptions.  The position descriptions outline the CCSAs' job duties, wage rate, and the job requirements.

8.      Regardless of whether the CCSA is classified as an employee or independent contractor, the material aspects of the job duties, policies and pay are the same for all CCSAs.

9.      Despite Defendant's classification of some CCSAs' as independent contractors, the totality of circumstances reveals that they are in fact Defendant's employees, not independent contractors.

10.     Defendant exercises an extreme level of control over nearly every aspect of the CCSAs' job duties.

11.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CCSAs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact  Sheet  #64:  Call  Centers  under  the  Fair  Labor  Standards  Act  (FLSA),

2

https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

12.     One of those abuses, at issue here, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

13.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

14.     Defendant requires many CCSAs to work a full-time schedule, plus overtime, however, Defendant does not compensate CCSAs for all work performed.

15.     Defendant requires its CCSAs to perform compensable work tasks before and after their scheduled shifts, but trains and instructs its CCSAs not to record this time as time worked.

16.     This uniform timekeeping policy results in CCSAs not being paid for all time worked, including overtime.

17.     In fact, Defendant typically only pays the CCSAs for their scheduled shift, without regard to the number of hours they actually work. This fact is evidenced by Plaintiff Davis's pay statement.

18.      In the course of performing their job responsibilities, Defendant's CCSAs use multiple computer networks, software programs, applications and phone systems. The time CCSAs spend booting up and logging into these programs and applications before and after their shifts is compensable because the programs and applications are an integral, indispensable and

important part of the CCSAs' work, and they cannot perform their jobs effectively without them.

19.    Defendant's CCSAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

20.    Additionally, fifteen minutes before every shift, Defendant requires CCSAs to attend pre-shift meetings to discuss daily survey scripts and other matters off-the-clock.

21.    Defendant also requires CCSAs to perform a test of their computer and phone systems before clocking-in for their shifts.

22.    Despite these pre-shift duties, Defendant does not permit CCSAs to log into the timekeeping system until five (5) minutes before the scheduled shift starts.

23.    Defendant offers all CCSAs a fixed hourly rate for their services.

24.    However, Defendant systematically and routinely breaches its agreement to pay CCSAs at a fixed hourly rate for all hours worked.

25.    The training Defendant provides for its CCSAs throughout the country is centralized.

26.    Upon information and belief, Defendant's CCSAs all follow the same timekeeping process and are subject to the same relevant timekeeping, schedule adherence, and attendance policies.

27.    The individuals Plaintiffs seek to represent in this action are current and former CCSAs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

28.    Defendant knew or should have known how long it takes CCSAs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but elected not to.

29.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

30.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

31.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

32.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

33.     This Court also has diversity jurisdiction, pursuant to 28 U.S.C. § 1332 because the parties are not domiciled in the same state.

34.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

35.     Defendant's CCSAs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of interstate phone lines in the

performance of their job duties.

36.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

37.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

38.     This Court has personal jurisdiction over Defendant because it conducts business within the State of Connecticut, has its principle place of business and headquarters in Connecticut, is registered with the Connecticut Secretary of State and employs individuals within the State of Connecticut.

39.     Personal jurisdiction also applies to Defendant because it has purposefully availed itself of the privilege of conducting activities in the State of Connecticut, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

40.     This Court has personal jurisdiction over Defendant because its members are located in the State of Connecticut.

## VENUE

41.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides and maintain their principal place of business and headquarters in this District.

## PARTIES

42.     Plaintiff YOLANDA DAVIS ("Plaintiff Davis") is a South Carolina resident who

worked for Defendant as a CCSA from her home office in South Carolina within the three years preceding the filing of this lawsuit.

43.     Defendant paid Plaintiff Davis for her services in their call center in the form of an hourly wage, ranging between $10.00 to $12.50 per hour.

44.     Plaintiff Davis signed a consent to join this collective action lawsuit.

45.     Plaintiff TENESHIA BANKSTON ("Plaintiff Bankston") is a Mississippi resident who worked for Defendant as a CCSA from her home office within the past three years.

46.     Defendant paid Plaintiff Bankston for her services in the form of an hourly wage, most recently at the rate of $10.00 per hour.

47.     Plaintiff Bankston signed a consent to join this collective action lawsuit.

48.     Defendant DYNATA LLC ("Defendant Dynata") is a Connecticut Limited Liability Corporation (Business ID # 0736234) with its principal place of business located at 4 Research Drive, Suite 300, Shelton, CT, 06484.

## GENERAL ALLEGATIONS

49.     Defendant employed Plaintiffs as CCSAs from their home offices within the last three (3) years.

50.     Defendant's CCSAs are responsible for, among other things: (a) attending pre-shift meetings to review scripted surveys for their shifts; (b) running pre-shift systems diagnostic tests; (c) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before making survey phone calls; (d) making outbound survey calls to consumers on behalf of Defendant; (e) ensuring that every call is properly documented and accounted for in Defendant's system; and (f) logging out of the computer software programs and applications and the phones and shutting down their computers.

7

51.     Defendant's CCSA jobs are hourly, non-exempt positions.

52.     While many CCSAs are classified as part time, the reality is there is no cap on the number of shifts a CCSA can shoes to work, so, in many instances, CCSAs work overtime, particularly after consideration of the off-the-clock work discussed herein.

53.     As illustrated in the position descriptions, Defendant offers CCSAs a "[f]lexible part-time personalize[d] schedules within the company operating hours."

54.     To accomplish this schedule, Defendant requires many of its CCSAs to sign up for available shifts within their operating hours using the third-party "Shiftsmart" application.

55.     Shiftsmart is an application CCSAs download on their phone. Shiftsmart allows "[c]ompanies [to] break free from the high costs, cumbersome systems, and the low quality of traditional staffing solutions." *See*, Creating a Strong Labor Market & a Better World | Shiftsmart (last visited on 8/15/2022).

56.     Although Defendant's job postings state the position is part-time, the truth is that there is no limitation on the number of shifts a CCSA can sign up for, and on some days, CCSAs register for double shifts.

57.     The Shiftsmart application notifies CCSAs that "you can work as much or as little as you like – there is no cap to how many hours" a CCSA can work. Consequently, often CCSAs work a full-time schedule despite Defendant's "part-time" classification.

58.     To the extent CCSAs have some flexibility in selecting the shifts they want to work, that is where Defendant's flexibility with CCSAs ends.

59.     At all relevant times, Defendant controlled the CCSAs' work duties, protocols, applications, assignments and employment conditions. Defendant was also responsible for training and continuing the CCSAs' education in their role as CCSAs.

8

60.     Defendant provided every CCSA with step-by-step scripts of the surveys, and even with canned responses to common objections or concerns raised by the consumer who was being called by the CCSA.

61.     If a CCSA does not follow the exact scripts, then they are subject to discipline. For example, failure to provide the precise greeting supplied by Defendant is grounds for discipline. Indeed, Plaintiff Davis has received low call scores for departing from the scripted greeting supplied by Defendant.

62.     Defendant has strict expectations that their CCSAs constantly be dialing consumers. Defendant monitors the amount of "Wrap" time (post-call documentation) each CCSA has each shift and if the Wrap time exceeds Defendant's allotted Wrap time, then the CCSA is subject to being automatically clocked out by Defendant.

63.     On August 13, 2022, Shiftsmart relayed a message to Plaintiff from Defendant that stated "Dynata is monitoring and has reported the following issue: Not on Task. Please make sure to dial and dispose quickly and stay on task during shift. Here is the specific feedback we received from Dynata: 18294259 – dispose call at 18 seconds … 17300094 – did not deliver intro."

64.     Defendant often unilaterally clocks CCSAs out without any notice. For example, during her August 13, 2022, shift referenced above, Plaintiff was "unassigned" (clocked out) for the day because she was unable to complete a survey within the first two hours of her shift, despite the fact she was making calls and trying to complete surveys. Even worse, after she was involuntarily clocked out without notice, she was instructed to work off the clock. Specifically, she was instructed to "Study the One Note before your next shift."

65.     In general, Defendant expects CCSAs to make 75-100 calls per hour and complete at least 1 survey per hour to meet Defendant's performance metrics.

66.     At the end of each shift, Defendant provides CCSAs with "Key Shift Stats" that include: surveys completed ("Production Rate" or "PR"), utilization, calls per hour, and break time.

67.     Defendant's CCSAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

68.     These programs, applications and systems are integral and an important part of the CCSA's work, and they cannot perform their jobs without them.

69.     Although heavily reliant on staffing companies and other third parties (like Shiftsmart) to find their employees, Defendant's website refers to CCSAs as "employees" and provides the same job description from state to state:

> We are looking for talented call center survey agents to perform outbound surveys from home with respondents and accurately record their answers. These surveys range in topics from politics to customer satisfaction and beyond. The opinions you collect, and record are sent to our clients to help them make more informed business decisions. No sales or collections involved!

70.     From coast to coast, Defendant employs CCSAs, such as Plaintiffs, with essentially identical job duties and responsibilities. *Id.*

71.     Regardless of whether the CCSA finds employment with Defendant through a staffing agency or directly through Defendant's website (or a job fair), the responsibilities and duties of the CCSAs are the same or extremely similar in all material and relevant aspects.

72.     Upon information and belief, Defendant's CCSAs are subject to the same relevant timekeeping and attendance policies and are subject to quality assurance reviews based on the same or similar criteria.

73.     Defendant expressly instructs and trains CCSAs to appear on "Pre-Shift Zoom" calls 15 minutes before their shifts, and critically, before clocking in.

74.     Specifically, Defendant instructed Plaintiffs and all other CCSAs that "[a] pre-shift meeting will be held 15 minutes prior to the shift start time to help you have a successful shift. PR is particularly important to be eligible to see future shifts."

75.     Defendant only pays CCSAs when they are on the phone and conducting surveys.

76.     Additionally, if a CCSA is not clocked out mid-shift by Defendant, the Defendant still only pays the CCSAs for the scheduled shift, without regard to the hours actually worked.

77.     Failure to meet Defendant's desired Production Rate will result in Defendant clocking the CCSA out for their shift. As a result, this policy pressures the CCSAs to perform other off-the-clock work, such as booting up and shutting down essential computer programs.

78.     Defendant enforces this policy through their uniform compensation and timekeeping procedures.

79.     CCSAs, including Plaintiffs, are pressured to only clock in when they are fully prepared to make calls.

80.     If CCSAs include any time worked before they were prepared to make calls, Defendant subjects them to discipline through negative performance metrics or simply disregards the time. For example, recording time before being fully available to make calls will result in a lowered PR score, which then leads to the CCSA being clocked out by Defendant, and eventually, puts them at risk to be terminated.

81.     Defendant furthermore enforces its policy of requiring all computer networks, programs and applications be open and ready at the commencement of the CCSAs' shift through their call quality assurance systems, which Defendant uses to monitor and grade CCSAs' calls. For example, as stated above, any deviation from the appropriate call script will result in discipline.

82.     Through these company-wide guidelines for CCSAs, Defendant micromanages and

controls the day-to-day activities of CCSAs, such as Plaintiffs.

83.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

84.     Defendant requires CCSAs to attend meetings fifteen (15) minutes before the start of their shift and to run complete system diagnostic checks, but does not pay them for this time.

85.     Because CCSAs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and timekeeping system fails to properly account and compensate them for all time worked, including but not limited to their overtime hours, each day and each workweek. Thus, the hours reflected on the CCSAs' pay statements are inaccurate.

86.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CCSAs for no less than approximately seventeen (17) minutes per day of work performed during pre- and post-shift time.

### A.     Pre-Shift Off-the-Clock Work

87.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CCSAs perform pre-shift work tasks for which they are uncompensated.

88.     Pursuant to Defendant's policies, training and direction, Defendant's CCSAs are required to attend pre-shift meetings to review scripts for the day, run system diagnostic tests, then start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

89.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen minutes per day, and the tasks can take longer if CCSAs experience technical problems with the software and/or applications.

90.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other

CCSAs, were required to complete the following tasks or tasks substantially similar to the following tasks[2]: turn on the computer; run system diagnostics tests; log-in and attend a pre-shift meeting fifteen minutes prior to the scheduled shift; connect to global protect; sign into the Dynata Interviewer; check headsets; confirm screen share; pull up necessary surveys; check-in using the Shiftsmart app and take a picture of laptop with CATI software.

91.    The aforementioned tasks are an integral and essential aspect of a CCSA's job duties and responsibilities, as CCSAs must have all of the above referenced computer programs, systems, and applications up and running on their computers and phone system in order to be prepared to make survey calls. Yet, Defendant does not pay them for these compensable tasks.

92.    As a result, Defendant maintain a common plan and policy pursuant to which it fails to pay CCSAs for approximately fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

**B.    Post-Shift Off-the-Clock Work**

93.    Pursuant to Defendant's policies, training and direction, Defendant's CCSAs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts, then shut down their computer.

94.    The shutdown and logout process takes approximately two (2) minutes per day.

95.    Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CCSAs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last survey call.

96.    Defendant does not compensate CCSAs for the time spent shutting down and logging out of their computer systems.

---

[2] Plaintiffs recognize there is some variance in surveys and scripts, but such variances are immaterial to the issue in this case.

97.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and all other CCSAs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CCSAs.

### C.     Exemplary Pay-Period to Illustrate Compensation Deficiencies

98.     An example of specific workweeks where Defendant failed to pay Plaintiff Davis all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Workweek of August 14, 2022 to August 21, 2022**

- Plaintiff Davis was paid at a rate of $10.00 per hour for her 40.00 regular hours, $12.00 per hour for 5 hours that had a shift differential, and no overtime premiums.

- With unpaid pre-shift and post-shift time, of approximately seventeen (17) minutes per shift, at nine shifts in the week, Plaintiff Davis should have been paid an additional one hundred fifty three (153) minutes at her overtime rate during the workweek.

### D.     Defendant Failed to Pay the Promised Hourly Rate

99.     In breach of the promise to pay for all hours worked at a specified hourly rate, Defendant failed to even pay Plaintiffs for all hours reported through Shiftsmart.

100.    For example, on July 30, 2022, Plaintiff accepted Defendant's offer to perform the duties of a CCSA in exchange for $10.00 per hour. On that day, she reported 4.5 hours worked, but Defendant only paid her for 4 hours ($40.00).

101.    Similarly, on August 1, 2022, Plaintiff accepted Defendant's offer to perform the duties of a CCSA in exchange for $10.00 per hour. On that day, she reported 5 hours worked, but Defendant only paid her for 1.6 hours ($16.00).

### E.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

102.    At all relevant times, Defendant directed and directly benefitted from the work

14

performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift and post-shift activities performed by CCSAs.

103.    At all relevant times, Defendant controlled the work schedules (once the CCSA signed up for a shift), duties, protocols, applications, assignments and employment conditions of their CCSAs.

104.    At all relevant times, Defendant was able to track the amount of time CCSAs spent in connection with the pre-shift and post-shift activities. However, Defendant failed to do so and failed to compensate CCSAs for the off-the-clock work they performed.

105.    At all relevant times, CCSAs were non-exempt hourly employees, subject to the requirements of the FLSA.

106.    At all relevant times, Defendant misclassified the CCSAs as independent contractors.

107.    At all relevant times, Defendant used its attendance, adherence and timekeeping policies against the CCSAs in order to pressure them into performing the pre-shift and post-shift off-the-clock work.

108.    Defendant expressly trained and instructed CCSAs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to make calls (i.e., were phone ready and understood the scripts) the moment their shifts began.

109.    At all relevant times, Defendant's policies and practices deprived CCSAs of wages owed for the pre-shift and post-shift activities they performed. In workweeks that Defendant's CCSAs worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

110.    Defendant knew or should have known that the time spent by CCSAs in connection

with the pre-shift, meal-period and post-shift activities was compensable under the law.

111.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

112.    Despite knowing CCSAs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

113.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

*All current and former CCSAs who worked for Defendant remotely at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

114.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CCSAs for all overtime hours worked.

115.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

116.    Defendant assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

117.    As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

16

a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

118. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

119. Defendant's unlawful conduct has been widespread, repeated and consistent.

120. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

121. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

122. The employment relationships between Defendant and every proposed FLSA Collective member are largely the same and differ only by name, location and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

123. Many similarly situated current and former CCSAs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

124.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

125.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

126.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

127.     The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS

128.     Plaintiff Davis brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> **All current and former CCSAs who worked for Defendant in South Carolina at any time during the applicable statutory period.**

(hereinafter referred to as the "Rule 23 South Carolina Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

129.     The members of the Rule 23 South Carolina Class are so numerous that joinder of all Rule 23 South Carolina Class members in this case would be impractical.

130.     Plaintiff Davis reasonably estimates that there are thousands of Rule 23 South Carolina Class members.

131.     Rule 23 South Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

132.     There is a well-defined community of interest among Rule 23 South Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 South Carolina Class.  These common legal and

factual questions include, but are not limited to, the following:

a.  Whether the pre-, mid-, and post-shift time Rule 23 South Carolina Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 South Carolina Class ("SCPWA"), as contemplated by the South Carolina Payment of Wages Act;

c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 South Carolina Class in violation of the SCPWA;

d.  Whether Defendant failed to properly notify each member of the Rule 23 South Carolina Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made from their wages;

e.  Whether Defendant properly furnished each Rule 23 South Carolina Class Member with an itemized statement showing the gross pay and deductions;

f.  Whether Defendant failed to timely pay all wages owed to the Rule 23 South Carolina Class, as required by SCPWA; and

g.  Whether the Rule 23 South Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 South Carolina Class but otherwise not paid, and if so, the appropriate amount thereof.

133.    Plaintiff Davis's claims are typical of those of the Rule 23 South Carolina Class in that she and all other Rule 23 South Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Davis's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

134.    Plaintiff Davis will fully and adequately protect the interests of the Rule 23 South Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of South Carolina wage and hour class actions. Neither Plaintiff nor her counsel have interests that

are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

135.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

136.    This case will be manageable as a Rule 23 Class action. Plaintiff Davis and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

137.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

138.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

139.    Plaintiff Davis brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CCSAs who worked for Defendant in the United States of America at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

140.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate that there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

141.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities and pre-shift meetings/training prior to clocking in for each shift is compensable time;

    b.    Whether Defendant breached its contract with Plaintiffs and the Rule 23 Nationwide Class members by failing to pay for this pre-shift time at their agreed upon hourly rate;

    c.    Whether Defendant breach its contract with Plaintiffs and the Rule 23 Nationwide Class members by otherwise failing to pay for all hours worked at their agreed upon hourly rate; and

    d.    Whether Defendant was unjustly enriched by failing to pay Plaintiffs and the Rule 23 Nationwide Class members for all hours worked at their agreed upon hourly rate, as set forth herein.

142.    Plaintiffs claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide

Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

143.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and she has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

144.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

145.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

146.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

147.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
### FAILURE TO PAY OVERTIME WAGES

148.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

149.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

150.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

151.    At a minimum, Defendant was a joint employer of Plaintiffs and the FLSA Collective. Plaintiffs have supported this assertion by the exemplary facts contained herein, as well as the documents attached hereto.

152.    In addition, or in the alternative, Defendant was engaged in a common enterprise with the various staffing agencies (such as Shiftsmart) and its various subsidiaries. Plaintiffs have supported this assertion by the exemplary facts contained herein, as well as the documents attached hereto

153.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

154.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

155.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

156.    At all times relevant to this action, Defendant misclassified many (if not all) of its

CCSAs as independent contractors.

157.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform approximately seventeen minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

158.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

159.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

160.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes its CCSAs to perform their off-the-clock work.

161.    Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

162.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 South Carolina Class Action)
### South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq.*;

163.    Plaintiff Davis re-alleges and incorporates all previous paragraphs herein.

164.    The South Carolina Payment of Wages Act (SCPWA) governs the activities of and imposes obligations on Defendant as the South Carolina Rule 23 Class Members' "employer."

*See*, SC Code Ann. § 41-10-10.

165.    The SCPWA provides that "[e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from wages." SC Code Ann. § 41-10-30 (A).

166.    Furthermore, "[a]ny changes in these terms must be made in writing at least seven calendar days before they become effective." *Id*.

167.    Defendant failed to properly and lawfully notify Plaintiff Davis and the Rule 23 South Carolina Class Members of changes to their hours and wages agreed upon, and the time and place of payment, and the deductions from their wages.

168.    Additionally, Defendant failed to furnish Plaintiff Davis and the Rule 23 South Carolina Class Members with an "itemized statement showing his gross pay and the deductions made from his wages for each pay period." SC Code Ann. § 41-10-30 (C).

169.    Defendant failed to pay Plaintiff Davis and the Rule 23 South Carolina Class Members "all wages due" as required by SC Code Ann. § 41-10-40.

170.    Defendant unlawfully withheld or diverted the wages of Plaintiff Davis and the Rule 23 South Carolina Class Members, in violation of SC Code Ann. § 41-10-40 (C).

171.    Defendant failed to "pay all wages due at the time and place designated," in violation of SC Code Ann. § 41-10-40 (D).

172.    The SCPWA provides that "[i]n the case of any failure to pay wages due to an employee … the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." SC Code Ann. § 41-10-80 (C).

173.    The SCPWA provides for a three-year (3) statute of limitations on all such civil

claims. *Id.*

174.    Pursuant to SC Code Ann. § 41-10-100, "[n]o provision [of the SCPWA] may be contravened or set aside by private agreement.

## COUNT III
### Nationwide Breach of Contract
### (On Behalf of the Rule 23 Nationwide Class)

175.    Plaintiffs re-allege and incorporate by reference all other paragraphs as though fully stated herein.

176.    This Count does not seek to collect unpaid overtime wages, but instead, seeks to recover unpaid straight time wages in workweeks where Plaintiffs and the Rule 23 Nationwide Class members worked forty (40) hours or less (inclusive of off-the-clock work) in the workweek.

177.    This Count only seeks to recover unpaid wages to the extent those wages are not collectable under Count I and Count II.

178.    At all time relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

179.    The contract between the Rule 23 Nationwide Class (including Plaintiffs) is no based solely on the basic nature of the employment relationship, but instead, based on the affirmative contractual representations and promises made by Defendant that all Rule 23 Nationwide Class members would be paid at a specified hourly rate for all hours worked.

180.    Defendant made these affirmative contractual representations and promises to pay the Rule 23 Nationwide Class for all hours worked in writing (e.g. via offer letters, job postings, etc.).  These documents are in Defendant's possession. Additionally, throughout the employment of the Rule 23 Nationwide Class, Defendant made contractual verbal representations and promises

26

to pay Plaintiffs and the Rule 23 Nationwide Class members for all hours worked at their specified hourly rates.

181.    For example, Defendant promised to pay Plaintiffs $10.00 to $12.50 per hour (the higher rates for shift differential).

182.    An oral employment agreement existed between Defendant and Plaintiffs (along with all other CCSAs) to pay them for all hours worked at their agreed upon regular rate, which was greater than the applicable state and federal minimum wage rates.

183.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay statement issued to Plaintiffs and the Rule 23 Nationwide Class members.

184.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs as CCSAs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the off-the-clock work described herein.

185.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached their contractual obligations with Plaintiffs and each member of the Rule 23 Nationwide Class.

186.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT IV
**Unjust Enrichment**

**(On behalf of the Rule 23 Nationwide Class)**

187.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

188.   This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

189.   This Count is only applicable in the event the Court determines that a binding and valid contract did not exist between Defendant and the Rule 23 Nationwide Class, as alleged in Count III.

190.   This Count does not seek to collect unpaid wages, or any other wage recoverable by statute, but instead, seeks to recover unpaid straight time wages in workweeks where Plaintiffs and the Rule 23 Nationwide Class members worked less than forty (40) hours in the workweek.

191.   At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

192.   Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs as CCSAs and carrying out their required work duties.

193.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

194.   Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

195.   Defendant received and accepted the above-referenced off-the-clock work services

from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

196.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

197.    Defendant has been unjustly enriched by the retention of monies receive pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

198.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

199.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative FLSA Collective, the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class, request judgment as follows:

    a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.    Certifying this action as a class action (for the Rule 23 South Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Davis's state law claims under the SCPWA (Count II);

    c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs common law breach of contract and (in the alternative) unjust enrichment claims (Counts III and IV);

d.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 South Carolina Class members, and Rule 23 Nationwide Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.  Designating Plaintiffs as the representative of the FLSA collective action, the Rule 23 South Carolina Class (Plaintiff Davis), and the Rule 23 Nationwide Class (both Plaintiffs), and undersigned counsel as Class counsel for the same;

f.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.  Declaring Defendant's violation of the FLSA was willful;

h.  Declaring Defendant violated the SCPWA as cited herein;

i.  Declaring Defendant's violation of the SCPWA was willful;

j.  Declaring Defendant breached its contract with Plaintiffs and the Rule 23 Nationwide Class members, as explained herein;

k.  Declaring Defendant was unjustly enriched at the expense of Plaintiffs and the Rule 23 Nationwide Class members, as explained herein:

l.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

m.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

n.  Awarding treble damages as provided by the SCPWA;

o.  Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

p.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided, with respect to the above-entitled cause.

Dated: August 23, 2022                    Respectfully Submitted,

By: _____
          Richard E. Hayber (ct11629)
**HAYBER, McKENNA & DINSMORE, LLC**
750 Main Street, Suite 904
Hartford, CT 06103
Telephone: (860) 522-8888
Facsimile: (860) 218-9555
Email: rhayber@hayberlawfirm.com

**ASH LAW, PLLC\***
Charles R. Ash, IV (P73877) (*Pro Hac Vice*)
ASH LAW, PLLC
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.\***
Andrew R. Frisch (FBN 027777) (*Pro Hac Vice*)
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**HOOPER HATHAWAY, P.C.\***
Oscar Rodriguez (P73413) (*Pro Hac Vice*)
126 Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*\*Pro Hac Vice* application forthcoming
*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*

31

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
YOLANDA DAVIS and TENESHIA BANKSTON,
Individually and on behalf of other similarly situated

**DEFENDANTS**
DYNATA, LLC

**(b)** County of Residence of First Listed Plaintiff   South Carolina
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Hayber, McKenna & Dinsmore, LLC, 750 Main Street,
Suite 904, Hartford, CT 06103 (860) 522-8888

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☒ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 216(b)
Brief description of cause:
Recovery of unpaid wages and related damages under State and Federal Wage laws

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   8/23/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____