UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X

YOLANDA DAVIS, TENESHIA
BANKSTON, and TIFFANY TAYLOR
individually, and on behalf of others similarly
situated,

                Plaintiffs,

      v.

DYNATA, LLC,

                Defendant / Third-Party
                Plaintiff,

      v.

SHIFTSMART, INC.,

                Third-Party Defendant.

Case No. 3:22-cv-01062

Hon. Sarala V. Nagala

-------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF SHIFTSMART, INC.'S MOTION FOR A STAY AND TO COMPEL ARBITRATION

GORDON REES SCULLY MANSUKHANI, LLP
Greil Roberts
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
(860) 494-7507
groberts@grsm.com
*Attorney for Shiftsmart*

MICHELMAN & ROBINSON, LLP
Jared B. Foley, Esq.
605 Third Avenue, 30th Floor
New York, NY 10158
(212) 659-2563
jfoley@mrllp.com
*Of Counsel*

## <u>TABLE OF CONTENTS</u>

I ............................................................................................................................................................. 1

Introduction ........................................................................................................................................... 1

II ........................................................................................................................................................... 3

BACKGROUND ....................................................................................................................................... 3

    A.   Dynata Enters a Master Services Agreement with Shiftsmart.................................................. 3

    B.   The Plaintiffs Are Engaged to Perform Market Research for Dynata. ..................................... 3

    C.   The Plaintiffs Agree to Arbitrate Disputes and Claims "Arising" Under the PSAs. .......................... 6

    D.   The Plaintiffs Waived the Right to Proceed by Class or Collective Action. ...................................... 7

    E.   The Plaintiffs Filed this Class and Collective Action in Violation of the PSAs. ................................. 8

III ........................................................................................................................................................ 10

ARGUMENT ......................................................................................................................................... 10

    A.   This Court Should Grant Shiftsmart's Motion to Compel Arbitration. ................................. 10

IV ........................................................................................................................................................ 19

CONCLUSION....................................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)......................................................................11, 13, 15

*Blackstone Medical, Inc. v. Phoenix Surgical, L.L.C.*,
    470 S.W.3d 636 (Tex. Ct. App. 2015) ...................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440, 443 (2006)......................................................................11

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)..............................................................................10

*Contec Corp. v. Remote Solution, Co.*,
    398 F.3d 205 (2d Cir.2005)....................................................................15

*Doctor's Associates Inc. v. Burr*,
    226 F.Supp.3d 106 (D. Conn. 2016) ......................................................14

*Errato v. Am. Express Co.*,
    2019 WL 3997010 (Dist. Conn. 2019) ..............................................12, 16

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)..............................................................................12

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)..............................................................12, 16

*Moses H Cone Mem 'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 24 (1983) ...........................................................................11

*Naranjo v. Nick's Mgmt*,
    2023 WL 416313 (N.D. Tex. 2023)...................................................17, 18

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996)....................................................................11

*TLC Hosp., LLC v. Pillar Income Asset Mgmt.*,
    570 S.W.3d 749 (Tex. Ct. App. 2018) ...................................................12

ii

**Statutes**

28 U.S.C. § 2201...................................................................................................................10

Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq* ................................................1, 10, 11, 16, 19

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*...........................................2, 9, 13, 17

Kentucky Wages and Hours Act, KY 529.010, *et seq*...................................................................9

South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq.* ...............................9

# I
## INTRODUCTION

Third-Party Defendant Shiftsmart, Inc. ("Shiftsmart") brings this motion to stay this litigation and compel the named Plaintiffs Yolanda Davis, Teneshia Bankston, and Tiffany Taylor, and the opt-in Plaintiffs[1] (collectively, "Plaintiffs") to arbitrate their claims against Defendant / Third-Party Plaintiff Dynata, LLC ("Dynata") **_individually_** pursuant to sections 3 and 4 of the Federal Arbitration Act ("FAA") and the plain terms of their agreements.

Plaintiffs' allegations in this action arise from the rights and duties set forth in the Plaintiffs' contracts with Shiftsmart, and, therefore, must be arbitrated. Each of the Plaintiffs were retained to perform market services for Dynata using Shiftsmart's technology platform. The Shiftsmart Platform matches and connects workers nationwide with companies, such as Dynata, that need a workforce to meet their business needs. Before using this platform, Plaintiffs agreed to the terms of service in the then-current version of Shiftsmart's Partner Services Agreements ("PSAs"). Each of the relevant PSAs defines the relationship between the Plaintiffs and the companies that retained them, as well as the manner in which the contractors received compensation for their services. Moreover, the PSAs contain class and collective action waiver provisions ("Class Action Waivers") and arbitration clauses, which, in sum, require disputes "arising" from the PSAs to be arbitrated on an individual basis.

In bringing this action, the Plaintiffs brazenly attempt to circumvent the arbitration clauses and the Class Action Waivers. Notwithstanding the clear terms of the PSAs, Plaintiffs have brought a collective and class action, alleging, _inter alia_, that Dynata failed to compensate them

---

[1] As of the date of this motion, the following individuals have consented to join this action as Plaintiffs: Tiara Jones, Keshun Durden, Brittni Davis, Margaret Samantha Abernathy, Sasha Watson, Catera Duncan, Toya Shaunnell Kenan, and Alisa Charles. (_See_ Dkts. 47, 48, 49, 56, 62, 73, 74).

for pre-shift and post-shift activities. Plaintiffs also allege that the class members were "misclassified" as independent contractors and denied certain rights under the FLSA and State wage and hour laws, including overtime pay.

The arbitration provisions of the applicable PSAs plainly reach the Plaintiffs' claims in this dispute. Notably, the September 22, 2021 PSA, governing Shiftsmart's relationship with Yolanda Davis, broadly requires arbitration of "ANY AND ALL DISPUTES AND CLAIMS RELATING IN ANY WAY TO OR ARISING OUT OF THIS AGREEMENT, THE SHIFTSMART PLATFORM AND/OR THE SERVICES PROVIDED . . . ." Plaintiffs' claims here concern their compensation, the terms for which are set forth in the PSAs—and nowhere else. Likewise, Section 15 of the December 6, 2022 PSA, entered by Bankston and Taylor, requires "CLAIMS ARISING UNDER THIS AGREEMENT" to proceed to arbitration. Section 15 specifically covers the very claims in this action: "based upon . . . breach of a contract or covenant, . . . wages, minimum wage and overtime or other compensation . . . or any monies claimed to be owed, . . . common law claims, [and] equitable claims." Moreover, the December 6, 2022 PSA states that the arbitration provision applies to any dispute that Shiftsmart Partners, such as Plaintiffs, "may have against" a "User," such as Dynata. Finally, the question of arbitrability itself is a matter for arbitration.

That Dynata is not a signatory to the PSAs should pose no bar to the arbitration of Plaintiffs' claims against Dynata. ***Dynata has consented to the arbitration of Plaintiffs' claims and, indeed, endorses this Motion***.

The Plaintiffs should, likewise, be barred from bringing their claims, which arise under the PSA, as a class or collective action in accordance with the clear terms of the Class Action Waivers.

Accordingly, this Court should stay the above-captioned litigation and compel the Plaintiffs to arbitrate their dispute individually.[2]

## II
## BACKGROUND

### A.  DYNATA ENTERS A MASTER SERVICES AGREEMENT WITH SHIFTSMART.

Dynata operates "the world's largest first-party data platform for insights, activation and measurement," and provides market research services to thousands of companies. (Amend. Compl. ¶ 2). To conduct this market research, Dynata retains remote Call Center Survey Agents (CCSAs) to administer over-the-phone surveys from their home offices. (*Id.* ¶ 3).

Shiftsmart manages a technology platform that matches and connects workers, also called "Shiftsmart Partners," with companies, such as Dynata, that need a workforce to meet their business needs. *See* https://shiftsmart.com/platform. (Declaration of Richard Zicchino ("Zicchino Decl.," ¶ 3).

On December 13, 2019, Dynata entered a Master Services Agreement ("MSA") with Shiftsmart. (Zicchino Decl. Exh. A and ¶ 4). Pursuant to the MSA and in accordance with the applicable service Orders, Dynata used Shiftsmart's platform to schedule and deploy workers for Dynata's market research projects. (MSA ¶ 2.3; Zicchino Decl. ¶ 5).

### B.  THE PLAINTIFFS ARE ENGAGED TO PERFORM MARKET RESEARCH FOR DYNATA.

Following the execution of the MSA, the Plaintiffs in this action each worked on market research projects for Dynata. (Declaration of Clarin Gniffke ("Gniffke Decl."), Dkt. 70-3, ¶¶ 4–5; Zicchino Decl. ¶ 6). To be eligible for the engagement, each of the Plaintiffs agreed to the then-

---

[2] Because the agreements entered by the opt-in Plaintiffs are substantially similar to the agreements analyzed herein, the opt-in Plaintiffs must also be compelled to arbitrate their claims individually.

current version of Shiftsmart's Partner Services Agreement ("PSA"). (Zicchino Decl. ¶ 7).[3] After

agreeing to these terms, Plaintiffs obtained access to the Shiftsmart Platform and signed up for

shifts with Dynata. (Gniffke Decl. ¶ 4; Zicchino Decl. ¶ 8).

Every single one of the Plaintiffs in this case entered PSAs with Shiftsmart. (Zicchino Decl.

¶¶ 7–16; Gniffke Decl. ¶ 5). Each PSA contains an identical modification clause which establishes

that the PSA last entered by the Plaintiffs modifies and subsumes any prior PSAs:

> In the event Shiftsmart modifies the terms and conditions of this Agreement
> at any time, such modifications shall be binding on you only upon your
> acceptance of the modified Agreement. Continued use of the Shiftsmart
> Platform or Provider App after any such modifications shall constitute your
> acceptance of the modified Agreement.

(Zicchino Decl. Exhs. B–I, § 14.1). Accordingly, Plaintiffs are bound by the last PSA they entered.

Yolanda Davis' relationship with Shiftsmart is governed by the September 22, 2021 PSA; and

Bankston and Taylor's relationship with Shiftsmart is governed by the December 6, 2022 PSA.

---

[3] The successive PSAs were effective from: January 23, 2020 to June 25, 2020; June 26, 2020 to
October 20, 2020; October 21, 2020 to June 29, 2021; June 30, 2021 to September 21, 2021;
September 22, 2021 to August 4, 2022; August 5, 2022 to October 20, 2022; October 21, 2022 to
December 5, 2022; and December 6, 2022 to the present. (*See* Zicchino Decl. Exhs. B–I,
respectively).

| Table 1: Applicable Partner Services Agreements[4] | | | | |
|---|---|---|---|---|
| **Plaintiff** | **Sign-up Date** | **Accepted Updated Terms** | **Effective Dates of Applicable PSA** | **Zicchino Decl. Exhibit** |
| Margaret Samantha Abernathy | September 23, 2020 | -- | June 26, 2020 – October 20, 2020 | C |
| **Yolanda Davis\*[5]** | July 13, 2022 | -- | September 22, 2021 – August 4, 2022 | F |
| Keshun Durden | February 10, 2022 | -- | September 22, 2021 – August 4, 2022 | F |
| Brittni Davis | October 12, 2021 | -- | September 22, 2021 – August 4, 2022 | F |
| Tiara Jones | May 5, 2022 | September 20, 2022 | August 5, 2022 – October 20, 2022 | G |
| Sasha Watson | September 2, 2022 | December 8, 2022 | December 6, 2022 – the present | I |
| Catera Duncan | October 18, 2022 | February 3, 2023 | December 6, 2022 – the present | I |
| Toya Shaunnell Kenan | March 30, 2020 | December 7, 2022 | December 6, 2022 – the present | I |
| Alisa Charles | July 6, 2022 | December 7, 2022 | December 6, 2022 – the present | I |
| **Teneshia Bankston\*** | January 16, 2021 | December 18, 2022 | December 6, 2022 – the present | I |
| **Tiffany Taylor\*** | July 28, 2020 | December 7, 2022 | December 6, 2022 – the present | I |

---

[4] *See* Zicchino Decl. ¶¶ 10–16; Gniffke Decl. ¶¶ 4–5 and Exh. K.

[5] Named Plaintiffs identified in **bold\***

Under the PSAs, Dynata is a "User" authorized by Shiftsmart to request services via the Shiftsmart Platform from Shiftsmart Partners. (*See* Sept. 22, 2021 PSA § 1.8; Dec. 6, 2022 PSA § 1.8) ("User" definition). The PSAs provide that, absent a separate agreement with a "User" who requests services from a Shiftsmart Partner, Shiftsmart is responsible for payment of the Partner Fee or Provider Fee for completed tasks. (*See* Sept. 22, 2021 PSA § 4.2; Dec. 6, 2022 PSA § 4.2). Here, the Plaintiffs have no separate agreement with Dynata; Plaintiffs' sole agreement with respect to these services was entered with Shiftsmart. (Zicchino Decl. ¶ 13).

### C. THE PLAINTIFFS AGREE TO ARBITRATE DISPUTES AND CLAIMS "ARISING" UNDER THE PSAS.

Each of the applicable PSAs contains a broad arbitration provision.

1) September 22, 2021 PSA. The September 22, 2021 PSA (Zicchino Decl. Exh. F), entered by named Plaintiff Yolanda Davis, broadly requires arbitration of any disputes "arising out of" or "relating in any way to" the PSA, the Shiftsmart Platform, or the use of the Shiftsmart App and Websites:

> You agree that THE SOLE AND EXCLUSIVE FORUM AND REMEDY FOR ANY AND ALL DISPUTES AND CLAIMS RELATING IN ANY WAY TO OR ARISING OUT OF THIS AGREEMENT, THE SHIFTSMART PLATFORM AND/OR THE SERVICES PROVIDED (INCLUDING YOUR USE OF AND ACCESS TO THE SHIFTSMART APP AND WEBSITES) SHALL BE FINAL AND BINDING ARBITRATION, . . .

(Sept. 22, 2021 PSA § 15.2; *see also* June 26, 2020 PSA §15.2).

2) December 6, 2022 PSA. The December 6, 2022 PSA (Zicchino Decl. Exh. I), entered by named Plaintiffs Teneshia Bankston and Tiffany Taylor, similarly, contains a "broad" arbitration clause. Section 15 begins: "THIS SECTION 15 WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND SHIFTSMART TO SUBMIT CLAIMS ARISING UNDER THIS AGREEMENT, INCLUDING CLAIMS AGAINST EACH OTHER, TO BINDING AND

FINAL ARBITRATION . . . ." (Dec. 6, 2022 PSA §15). Under the heading, "Claims Covered By the Arbitration Provision," the PSA states that the arbitration clause should be interpreted broadly.

> This Arbitration Provision is intended to be ***as broad as legally permissible***, and, except as it otherwise provides, applies to all claims or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration.

(Dec. 6, 2022 PSA § 15) (emphasis added).

Section 15 specifically provides that claims brought by Shiftsmart Partners, such as the Plaintiffs, against "Users," such as Dynata, must also be arbitrated.

> Except as it otherwise provides, ***this Arbitration Provision applies to any dispute that*** Shiftsmart may have against you or that ***you may have against*** Shiftsmart, an Affiliate or ***User*** . . . .

(*Id*.) (emphasis added).

Further, the "Arbitration Provision applies, without limitation, to claims based upon . . . breach of a contract or covenant, . . . wages, minimum wage and overtime or other compensation . . . or any monies claimed to be owed, . . . common law claims, [and] equitable claims." (*Id*.)

The December 6, 2022 PSA takes the additional step of giving the arbitrator "exclusive authority to resolve any dispute relating to the . . . scope, applicability . . . of this Arbitration Provision." (Dec. 6, 2022 PSA § 15; *see also* Aug. 5, 2022 PSA § 15).[6]

### D. THE PLAINTIFFS WAIVED THE RIGHT TO PROCEED BY CLASS OR COLLECTIVE ACTION.

The signatories to each of the PSAs also waived the right to litigate or arbitrate their disputes by class or collective actions. The September 22, 2021 PSA states, in pertinent part, that Claims "under this agreement" cannot be pursued as class actions, and joinder of claims is barred:

---

[6] This is in contrast to the September 22, 2021 PSA, which states that "the arbitrator shall not have the authority to decide issues of arbitrability." (Sept. 22, 2021 PSA § 15.3).

> . . . You acknowledge and agree that you and Shiftsmart are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding . . . NO ARBITRATION OR CLAIM UNDER THIS AGREEMENT SHALL BE JOINED TO ANY OTHER ARBITRATION OR CLAIM . . . AND NO CLASS ARBITRATION PROCEEDINGS SHALL BE PERMITTED.

(Sept. 22, 2021 PSA § 15.2; *see also* June 26, 2020 PSA §15.2).

Likewise, pursuant to the December 6, 2022 PSA, claims arising under the agreement cannot be brought as class or collective actions:

> THIS SECTION 15 WILL . . . REQUIRE YOU AND SHIFTSMART TO SUBMIT CLAIMS ARISING UNDER THIS AGREEMENT . . . TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, COLLECTIVE, GROUP, OR REPRESENTATIVE ACTION IN COURT.

(Dec. 6, 2022 PSA § 15). Under the heading "Class and Collective Action Waivers" the December 6, 2022 PSA further provides:

> Shiftsmart and you agree to bring any claim on an individual basis only. Accordingly, YOU AND SHIFTSMART WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED, OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM.

(*Id*.; *see also* Aug. 5, 2022 PSA § 15) (collectively, the "Class Action Waivers").

### E.   THE PLAINTIFFS FILED THIS CLASS AND COLLECTIVE ACTION IN VIOLATION OF THE PSAs.

On August 23, 2022, Plaintiffs Yolanda Davis and Teneshia Bankston filed the class and collective action Complaint in this litigation. (*See* Dkt. 1). On November 16, 2022, Davis and Bankston filed a First Amended Complaint with Tiffany Taylor as an additional Plaintiff. (Amended Compl., Dkt. 32). In addition, eight individuals have consented to join this action as opt-in Plaintiffs. *See supra* note 1.

Plaintiffs allege, *inter alia*, that Dynata failed to compensate the workers, including Shiftsmart Partners, for pre-shift and post-shift activities. Plaintiffs also allege that the putative class and collective members were "misclassified" as independent contractors and were denied certain rights under the Fair Labor Standards Act ("FLSA"), including overtime pay.

On these grounds, Plaintiffs brought class and collective action claims against Dynata. Plaintiffs' FLSA, 29 U.S.C. § 201, *et seq.,* collective action claim (Count I) is brought on behalf of: "All current and former CCSAs who worked for Defendant remotely at any time during the three years preceding the filing of this Complaint up through and including judgment." (Amended Compl. ¶¶ 161, 199–212).[7] Plaintiffs' South Carolina Payment of Wages Act, SC Code Ann. §§ 41-10-10, *et seq.,* class action claim (Count II) is brought on behalf of: "All current and former CCSAs who worked for Defendant in South Carolina at any time during the applicable statutory period." (*Id*. at ¶¶ 213–24). Plaintiffs' Kentucky Wages and Hours Act, KY 529.010, *et seq*., class action claim (Count III) is brought on behalf of "All current and former CCSAs who worked for Defendant in Kentucky at any time during the applicable statutory period." (*Id*. at ¶¶ 177, 225–41). Plaintiffs' breach of contract and unjust enrichment claims (Counts IV and V, respectively) are both brought on behalf of a nationwide class of: "All current and former CCSAs who worked for Defendant in the United States of America at any time during the applicable statutory period." (*Id*. at ¶¶ 190, 242–67).

---

[7] In Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification (Dkt. 72), Plaintiffs propose a more narrow FLSA collective that specifically mentions Plaintiffs' use of the Shiftsmart application: "All current and former hourly Call Center Survey Agents that performed surveys for Dynata ("Defendant"), ***used the Shiftsmart application***, and reported working thirty-five hours or more for Dynata in a single week, at any time from November 28, 2019 to present." (*Id*. at 5) (emphasis added).

On January 9, 2023, Dynata filed a Third-Party Complaint against Shiftsmart asserting claims for a declaratory judgment (28 U.S.C. § 2201) and breach of contract. (Dkt. 67). Dynata alleges, *inter alia*, that Shiftsmart has a duty to defend and indemnify Dynata against the Plaintiffs' claims. (Third-Party Compl. ¶ 23).

### III
### ARGUMENT

#### A.  THIS COURT SHOULD GRANT SHIFTSMART'S MOTION TO COMPEL ARBITRATION.

The PSAs evidence transactions involving interstate commerce, having been entered into by residents of at least three states, including South Carolina (Yolanda Davis), Mississippi (Teneshia Bankston), and Kentucky (Tiffany Taylor). (*See* Amend. Compl. ¶¶ 45, 48, and 51). Therefore, the arbitration provisions are governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). *See* FAA § 2 (providing for the enforcement of "[a] written provision in any . . . contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction"). *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–13 (2001).

This Court should grant Shiftsmart's motion to compel Plaintiffs to arbitrate their claims against Dynata, individually, pursuant to FAA section 4 and the plain terms of the PSA. FAA § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").[8]

---

[8] Shiftsmart has standing to advance this petition against Plaintiffs pursuant to Rule 14(a)(2)(C) and (D) of the Federal Rules of Civil Procedure, which provides that: the "third-party defendant . . . (C) may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim; and (D) may also assert against the plaintiff any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

Arbitration is fundamentally a matter of contract. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The FAA dictates that any contract containing a binding arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [Section 2 of the FAA] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Under federal law, when courts interpret the scope of an arbitration provision, they must apply "a presumption of arbitrability." *AT&T Techs., Inc.*, 475 U.S. at 650 (internal quotation marks and citation omitted). The presumption reflects the purpose of the FAA, which is to enact "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H Cone Mem'l Hosp.*, 460 U.S. at 24. Therefore, any doubts regarding arbitrability "should be resolved in favor of arbitration." *Id.* at 25. *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration'") (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

"Arbitrability" of a dispute comprises two questions: (1) whether there is a valid agreement to arbitrate under the contract in question, and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law

principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

If the Court determines that the parties have agreed in writing to arbitration, then the Court should stay the proceedings pending arbitration. *Errato v. Am. Express Co.*, 2019 WL 3997010 (Dist. Conn. 2019), citing *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).

1) <u>Shiftsmart and the Plaintiffs Entered Into a Valid Arbitration Agreement.</u>

It is indisputable that the Plaintiffs entered into arbitration agreements with Shiftsmart. As described above, each of the Plaintiffs accepted the terms of services of a PSA of then-applicable PSAs, and then agreed to subsequent modifications of those PSAs. *See* § IIB *supra* (Table 1). Under Section 14.1 of the PSAs, the Plaintiffs' original agreement has been modified, and the Plaintiffs are bound by the terms of service in the last PSA they entered. *See Blackstone Medical, Inc. v. Phoenix Surgical, L.L.C.*, 470 S.W.3d 636 (Tex. Ct. App. 2015). ("A modification to a contract creates a new contract that includes the new modified provisions and the unchanged old provisions.").

2) The Arbitration Provision in the September 22, 2021 PSA Applies to Plaintiffs' <u>Claims Against Dynata.</u>

The September 22, 2021 PSA, entered by Yolanda Davis (and two opt-in Plaintiffs), includes an arbitration provision that reaches the Plaintiffs' claims in this dispute. The interpretation of the PSAs is governed by Texas law. (Sept. 22, 2021 PSA § 15.1; Dec. 6, 2022 PSA § 14.7).[9] Under Texas law, the Court is bound to "enforce an unambiguous agreement as written." *TLC Hosp., LLC v. Pillar Income Asset Mgmt.*, 570 S.W.3d 749, 760 (Tex. Ct. App.

---

[9] "This Agreement or any claim, cause of action, dispute or proceeding ("**Claim**") arising out of or related to this Agreement shall be governed by the laws of the State of Texas" (Sept. 22, 2021 PSA § 15.1). "[T]he validity, performance and construction of this Agreement shall be governed by the laws of the State of Texas . . . ." (Dec. 6, 2022 PSA § 14.7).

2018). In so doing, Courts must give contractual terms "their plain, ordinary, and generally accepted meaning." *Id*. Where an arbitration clause is "broad" so as to encompass "any" disputes arising from the contract, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc.,* 475 U.S. at 650.

The September 22, 2021 PSA broadly and unambiguously requires arbitration of "ANY AND ALL DISPUTES AND CLAIMS RELATING IN ANY WAY TO OR ARISING OUT OF THIS AGREEMENT, THE SHIFTSMART PLATFORM AND/OR THE SERVICES PROVIDED (INCLUDING YOUR USE OF AND ACCESS TO THE SHIFTSMART APP AND WEBSITES)." (Sept. 22, 2021 PSA § 15.2).

Here, Plaintiffs have made claims "relating . . . to or arising out of" the PSAs. Plaintiffs allege, *inter alia*, that Dynata failed to compensate CCSAs for pre-shift and post-shift activities; and that the CCSAs are in fact Dynata employees who were also improperly denied overtime pay, under the FLSA.

Plaintiffs' allegations arise from the PSA. The PSA sets forth all of the contractual rights and obligations between Users, such as Dynata, and Shiftsmart Partners, such as the Plaintiffs. Notably, Section 4.2 of the September 22, 2021 PSA titled "Payment from Shiftsmart" provides that "the following provisions shall govern your payment for providing Services" to Users, like Dynata. (Sept. 22, 2021 PSA § 4.2). The provision goes on to set forth the exact manner in which the Plaintiffs would be paid for their services to Users, such as Dynata:

> You will be paid the Partner Fee and reimbursed for any Approved Costs within seven (7) days after the Task has been completed . . . You acknowledge and agree that, unless the Request specifies otherwise . . . , you will only be compensated for completed Tasks and not for incomplete or partially completed Tasks or on an hourly or salary basis. You acknowledge and agree that the Partner Fee (and reimbursement of Approved Costs) is the only payment you will receive in connection with the provision of the Services.

13

(Sept. 22, 2021 PSA § 4.2). Indeed, the Plaintiffs have no separate contract setting forth their right to payment outside of the PSA. (*See* Memorandum of Law in Support of Dynata's Motion to Dismiss Claims for Breach of Contract and Unjust Enrichment, Dkt. 46-1, at 14 ("Dynata contends that Davis, Bankston and Taylor were hired by Shiftsmart, provided services to Dynata as "Shiftsmart Partners" pursuant to a services agreement between Dynata and Shiftsmart, and have no contractual relationship with Dynata.")).

Significantly, this provision provides no restriction on who may be sued in arbitration. Thus, on its face, the September 22, 2021 PSA encompasses claims against nonparties to the agreement, including Dynata. *See, i.e., Doctor's Associates Inc. v. Burr*, 226 F.Supp.3d 106, 111 (D. Conn. 2016) (held that arbitration clause that covered disputes "arising out of or relating to" the contract was broad enough, "on its face" to "encompass[] claims against nonparties to the agreement.").

Indeed, ***Dynata has consented to the arbitration of Plaintiffs' claims and endorses this Motion***.[10] (Zicchino Decl. ¶ 14). Thus, the fact that Dynata is not a signatory to the PSA poses no bar to the arbitration of Plaintiffs' claims against Dynata.

Accordingly, named Plaintiff Yolanda Davis, and the appropriate opt-in Plaintiffs, should be compelled to arbitrate their claims.[11]

---

[10] Notably, Dynata was granted express permission to "enforce [the December 6, 2022 PSA] as a direct or third-party beneficiary." (Dec. 6, 2022 PSA § 15).

[11] Because the September 22, 2021 PSA provides the applicable terms of service for Plaintiff Yolanda Davis as well opt-in Plaintiffs Keshun Durden and Brittni Davis, they must be compelled to arbitrate. Likewise, because the June 26, 2020 PSA, which binds opt-in Plaintiff Abernathy, is in effect identical to the September 22, 2021 PSA, Abernathy must also be compelled to arbitrate.

3) The Arbitration Provision in the December 6, 2022 PSA
Applies to Plaintiffs' Claims Against Dynata.

Likewise, the arbitration clause in the December 6, 2022 PSA, entered by Teneshia Bankston and Tiffany Taylor (and four opt-in Plaintiffs), reaches the Plaintiffs' claims.

As an initial matter, the December 6, 2022 PSA reserves questions of "arbitrability" for determination by an arbitrator, and not the Court. It is well settled that "[a]rbitrability is a question for the court to decide *unless the parties have unmistakably assigned that task to the arbitrator* . . . ." *See AT&T Techs., Inc.,* 475 U.S. at 649 (emphasis added). The December 6, 2022 PSA, agreed to by Bankston and Taylor, *unmistakably* gives the arbitrator "exclusive authority to resolve any dispute relating to the . . . scope, applicability . . . of this Arbitration Provision." (Dec. 6, 2022 PSA § 15). The Parties' adoption of the AAA Commercial Arbitration Rules for arbitrations brought under the agreement confirms their intent to reserve questions of arbitrability for the arbitrator. (Dec. 6, 2022 PSA § 15 ("Arbitration Procedures")). The AAA Commercial Arbitration Rules, Rule 7(a) states that: "*The arbitrator shall have the power to rule on his or her own jurisdiction*, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See also Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 208 (2d Cir.2005) (held that parties' decision to adopt the AAA Commercial Arbitration Rules serves as clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator).

On these grounds alone, the claims brought by Bankston and Taylor should be remitted to AAA arbitration. *See id.*

Nevertheless, should the Court choose to decide arbitrability, Bankston and Taylor's claims fall squarely within the scope of the arbitration clause. In section 15, under the heading "Claims Covered by the Arbitration Provision," it specifies that "[t]his Arbitration Provision is intended to

be *as broad as legally permissible*." (Dec. 6, 2022 PSA § 15 (emphasis added)). Section 15 goes on to provide that "this Arbitration Provision applies to any dispute that" Shiftsmart Partners, such as Plaintiffs, "may have against" a "User," such as Dynata. (*Id*.) Finally, Section 15 specifically covers claims brought by the Plaintiffs against Dynata for its alleged failure to pay wages and overtime, for breach of the employment contract, and for unjust enrichment. "[T]his Arbitration provision applies, ... to claims based upon . . . breach of a contract or covenant, . . . wages, . . . overtime or other compensation . . . or any monies claimed to be owed, . . . [and] equitable claims [i.e. unjust enrichment]." (*Id*.)

Accordingly, pursuant to FAA §§ 3 and 4, this Court should stay this proceeding and compel Plaintiffs Teneshia Bankston and Tiffany Taylor, as well as the appropriate opt-in Plaintiffs, to arbitrate this dispute. *Errato v. Am. Express Co*., 2019 WL 3997010 (D. Conn. 2019), citing *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).[12]

4) <u>Plaintiffs Should Be Compelled to Arbitrate their Claims Individually.</u>

Additionally, pursuant to the Class Action Waivers, this Court should require the Plaintiffs to arbitrate their claims *individually*. Each of the PSAs contains a Class Action Waiver provision. The September 22, 2021 PSA states that, as to claims under the PSA, "you and Shiftsmart are each waiving the right . . . to participate as a plaintiff or class in any purported class action or representative proceeding . . . AND NO CLASS ARBITRATION PROCEEDINGS SHALL BE PERMITTED." (September 22, 2021 PSA §1 5.2; *see also* June 26, 2020 PSA § 15.2). Likewise, the December 6, 2022 PSA states that, as to claims "ARISING UNDER" the PSA, "YOU AND

---

[12] Because the December 6, 2022 PSA provides the applicable terms of service for Plaintiffs Teneshia Bankston and Tiffany Taylor, as well opt-in Plaintiffs Tiara Jones, Sasha Watson, Catera Duncan, Toya Shaunnell Kenan, and Alisa Charles, they must all be compelled to arbitrate. Likewise, because the August 5, 2022 PSA, which binds opt-in Plaintiff Tiara Jones, is substantially similar to the December 6, 2022 PSA, Jones must be compelled to arbitrate her claims as well.

SHIFTSMART WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED, OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION." (December 6, 2022 PSA §15; *see also* August 5, 2022 PSA § 15 ("Class and Collective Action Waivers")).

For the reasons set forth above, Plaintiffs' claims arise under the PSAs. Thus, Plaintiffs' class and collective action claims are barred by the PSAs.[13]

The Plaintiffs' decision to sue Dynata does not absolve them of their obligation to pursue their claims individually. The decision in *Naranjo v. Nick's Mgmt,* 2023 WL 416313 (N.D. Tex. 2023) is instructive. In *Naranjo*, the plaintiff, an exotic dancer, brought a collective action against the defendants Nick's Clubs, Inc. and Nick Mehmeti, "on behalf of herself and all other exotic dancers who have worked [for Defendants]," alleging that the defendants, *inter alia*, "misclassified Naranjo and other exotic dancers as independent contractors, [and] did not pay them minimum wage or overtime compensation as required by the FLSA." *Naranjo,* 2023 WL 416313, at *2. Naranjo signed a "Licensing Agreement" with Nick's Clubs, Inc. which was governed by Texas law, and included an arbitration clause and class and collective action waiver. *Id*. Mehmeti was not a signatory to the Licensing Agreement. *Id*. at *10. Nevertheless, the Court, applying Texas law, dismissed the collective action against Mehmeti, holding that the equitable estoppel doctrine

---

[13] Because the September 22, 2021 PSA applies to Yolanda Davis as well opt-in Plaintiffs Keshun Durden and Brittni Davis, their class and collective action claims are barred and they are all required to arbitrate ***individually***. Likewise, because the June 26, 2020 PSA, which binds opt-in Plaintiff Abernathy, is effectively identical to the September 22, 2021 PSA, Abernathy must also arbitrate ***individually***.

Moreover, since the December 6, 2022 PSA applies to Plaintiffs Teneshia Bankston and Tiffany Taylor, as well opt-in Plaintiffs Tiara Jones, Sasha Watson, Catera Duncan, Toya Shaunnell Kenan, and Alisa Charles, their class and collective action claims are also barred, and they must all be compelled to arbitrate ***individually***. The August 5, 2022 PSA binds opt-in Plaintiff Tiara Jones and is substantially similar to the December 6, 2022 PSA, thus, Jones must arbitrate her claims ***individually*** as well.

allows the enforcement of class or collective action waivers against nonsignatories to the agreement where "the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory." *Id*. (citations omitted).

> [A] signatory cannot simultaneously enjoy the benefits of their contract and avoid its burdens simply because they sue a nonsignatory. This is true in the context of arbitration provisions, and it remains true in the context of collective action provisions.

*Id.* at 11.

The Plaintiffs here are similarly barred from bringing a class or collective action. The Plaintiffs' claims for unpaid wages and overtime rely and are dependent upon the PSAs. The PSAs set out all of the contractual rights and obligations between Users, such as Dynata, and Shiftsmart Partners, such as the Plaintiffs. Specifically, Section 4.2 in each of the PSAs describe the exact manner in which the Plaintiffs must be paid for their services to Users, such as Dynata. No other contract exists concerning the Plaintiffs' rights with respect to Dynata. Because the Plaintiffs' claims are dependent upon the payment obligations and rights enshrined in the PSAs, the Plaintiffs are estopped from avoiding the Class Action Waivers in the PSAs. *See Naranjo v. Nick's Mgmt,* 2023 WL 416313, at *10.

Accordingly, this Court should hold that the named and opt-in Plaintiffs' class and collective action claims are barred by the PSAs, dismiss the Plaintiffs' class and collective action claims, and compel them to arbitrate their claims *individually*.

**IV**
**<u>CONCLUSION</u>**

For the foregoing reasons, Shiftsmart respectfully requests that the Court grant its motion pursuant to FAA §§ 3 and 4 to stay these proceedings and compel the named Plaintiffs and the opt-in Plaintiffs to arbitrate their claims against Dynata individually.


Dated: May 1, 2023
Glastonbury, Connecticut

Respectfully submitted,


*/s/ Greil Roberts*
Greil Roberts
GORDON REES SCULLY
MANSUKHANI, LLP
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
*Attorneys for Shiftsmart, Inc.*

--and--

*/s/ Jared B. Foley*
Jared B. Foley (JF-1982)
MICHELMAN & ROBINSON LLP
605 Third Ave, 30th Floor
New York, NY 10158
(212) 659-2563
jfoley@mrllp.com
*Of Counsel*

19