## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between: (a) Yolanda Davis, Teneshia Bankston, and Tiffany Taylor; and (b) Dynata, LLC ("Dynata" or "Defendant").

## BACKGROUND

A.    Yolanda Davis, Teneshia Bankston and Tiffany Taylor are the named plaintiffs in *Yolanda Davis, et. al. v. Dynata, LLC*, United States District Court for the District of Connecticut, Civil Action No. 3:22-cv-01062 (the "Action"). Tara Jones, Keshun Durban, Brittni Davis, Margaret Samantha Abernathy, Sasha Watson, Catera Duncan, and Alisa Charles ("Opt-in Plaintiffs") have opted-in to the Action as plaintiffs and in doing so expressly agreed to be bound by the decisions of the named plaintiffs, including this Agreement. The three named plaintiffs are referred to in this Agreement as the "Plaintiffs." Dynata is the defendant in the Action.

B.    The Action includes claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), violations of South Carolina statutory law, violations of Kentucky statutory law, and common law claims of breach of contract and unjust enrichment. In the Action, the Plaintiffs allege that they performed telephone surveys for Dynata through Shiftsmart, Inc. ("Shiftsmart") and seek to pursue claims on their own behalf and on behalf of other individuals who did so. Individuals who performed surveys for Dynata through Shiftsmart are referred to in this Agreement as "Shiftsmart Partners."

C.    Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

D.    On September 25, 2023, the United States District Court for the District of Connecticut (the "Court") ruled that some Shiftsmart Partners were required to arbitrate the types of claims asserted in the Action, while others were not. Shiftsmart and the Plaintiffs have filed cross-appeals to the United States Court of Appeals for the Second Circuit as to the Court's September 25, 2023 arbitration ruling (the "Cross-Appeals").

E.    On September 25, 2023, the Court also ruled that the Plaintiffs could bring their FLSA claims as a conditionally certified collective action on behalf of Shiftsmart Partners who both (1) reported performing 35 or more hours of Dynata-related work in at least one week and (2) were not required to arbitrate pursuant to the Court's September 25, 2023 arbitration ruling. This Agreement provides relief to Shiftsmart Partners who performed 35 or more hours of Dynata-related work in at least one week.

F.    The Plaintiffs and Dynata have had arms-length discussions through counsel regarding possible settlement of the Action. The Plaintiffs and Dynata have received and evaluated data from Shiftsmart regarding the number of shifts worked by and amounts paid to Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week. Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week, and the Plaintiffs regardless of their weekly hours, are referred to collectively in this Agreement as "Potential FLSA Claimants."

In light of this background and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the Plaintiffs and Dynata HEREBY AGREE as follows.

## TERMS AND CONDITIONS

**1.    Seeking Court Approval.** Within 28 days after the date that this Agreement is signed by the Plaintiffs and Dynata, the Plaintiffs will file a motion (the "Approval Motion") requesting that the Court: (1) approve this Agreement as fair, adequate, and reasonable in all respects; and (2) enter judgment dismissing the Action with prejudice as to all claims and all parties, with all parties bearing their own costs, except as provided herein, and all rights of appeal waived (the "Dismissal"). If the Plaintiffs, before filing the Approval Motion, provide Dynata at least three business days to review it and cooperate in good faith to address any legitimate objections Dynata may have, Dynata will not oppose the Approval Motion. Dynata does not oppose Plaintiffs' request for incentive awards, attorney fees, litigation costs, or settlement administration expenses, as provided herein. The Plaintiffs will take (and if needed Dynata will cooperate in) any steps required to ensure the Court's jurisdiction (notwithstanding the cross-appeals to the United States Court of Appeals for the Second Circuit) to grant the Approval Motion and enter the Dismissal.

**2.    Duties Upon Court Approval.** If the Court grants the Approval Motion and enters the Dismissal: (a) the Plaintiffs and Dynata will jointly obtain any additional data or contact information from Shiftsmart to effectuate this Agreement, as stated in Section 4 below; (b) the Plaintiffs will engage a settlement administrator and cause the settlement administrator to take certain actions, as stated in Section 5 below; (c) the Plaintiffs will take (and if needed Dynata will cooperate in) appropriate steps to ensure the dismissal of the Cross-Appeals as moot; and (d) Dynata will fund the settlement as stated in Section 6 below.

**3.    Effect of Failure to Obtain Court Approval.** This Agreement is contingent upon court-approval. If, for any reason, the Court does not approve the Agreement, then the Parties will continue negotiating in good faith to reach an Agreement that cures the deficiencies identified by the Court that led to non-approval of the Agreement. Dynata, however, shall not under any circumstances have any obligation to increase the total amount it pays in connection with the settlement beyond the Total Settlement Amount, as defined in Section 6 below.

**4.    Obtaining Additional Information and Data from Shiftsmart.** If the Court grants the Approval Motion, the Plaintiffs and Dynata will cooperate to cause Shiftsmart to produce to the Settlement Administrator, as defined in Section 5 below an Excel file containing additional information and data for each Potential FLSA Claimant (the "Shiftsmart Data") that is necessary to effectuate this settlement.

**5.    Engaging and Instructing Settlement Administrator.** If the Court grants the Approval Motion, the Plaintiffs will engage ILYM, Inc. (the "Settlement Administrator") as settlement administrator and cause the Settlement Administrator to take the following actions:

(a)    establish a Qualified Settlement Fund account pursuant to Section 468B(g) of the Internal Revenue Service Code;

(b)     cooperate with Dynata to enable Dynata to pay the "Total Settlement Amount" as defined in Section 6 below into the Qualified Settlement Fund;

(c)     review the Shiftsmart Data and notify the Plaintiffs and Dynata of any deficiencies;

(d)     calculate the amount of the settlement payment for each Potential FLSA Claimant in accordance with the instructions set forth in Section 7 below and provide the Plaintiffs and Dynata an opportunity to review the calculations and correct any errors;

(e)     use the United States Postal Service's National Change of Address database to update the mailing address stated in the Shiftsmart Data for each Potential FLSA Claimant;

(f)     send each Potential FLSA Claimant, by First Class U.S. Mail, the Notice that is attached to this Agreement ("Notice"), together with a check drawn upon the Qualified Settlement Fund in the amount of the Potential FLSA Claimant's settlement payment, with the limited release language set forth in Section 9 of this Agreement printed on the back of the check ("Settlement Check");

(g)     if a Notice and Settlement Check is returned as non-deliverable, use reasonable efforts, including skip-tracing if necessary, to obtain an updated mailing address and re-mail the Notice and Settlement Check to any updated address located.

(h)     notify the Plaintiffs and Dynata on a weekly basis through reports and as reasonably requested of the status of the participation rate and each Settlement Check;

(i)     void each Settlement Check that remains uncashed 90 days after it was issued;

(j)     send Dynata a copy of each endorsed Settlement Check, including the endorsement on the back of the Settlement Check;

(k)     pay the Plaintiffs from the Qualified Settlement Fund, in recognition of their work relating to the case, service awards totaling Nine Thousand Dollars ($9,000.00), allocated as follows: Yolanda Davis ($5,000.00), Teneshia Bankston ($2,000.00), and Tiffany Taylor ($2,000.00);

(l)     pay the Plaintiffs' counsel from the Qualified Settlement Fund a total amount of Two Hundred Thirty Thousand Five Hundred Dollars ($230,500.00), to cover the separately negotiated attorney fees and costs, divided among the four law firms who have appeared on behalf of the Plaintiffs in the Action in accordance with joint written instructions from the four law firms;

(m)     transfer up to Twelve Thousand Dollars ($12,000.00) from the Qualified Settlement Fund to its own account as payment for all settlement administration fees and expenses;

(n)  any funds remaining after the settlement administration fees and expenses are paid shall pour into the Qualified Settlement Fund and be allocated to the Potential FLSA Claimants;

(o)  comply with any and all tax reporting obligations with respect to all payments called for under this Agreement, with all payments treated as non-wages;

(p)  maintain a record of the Settlement Administrator's performance of the actions listed above in accordance with best practices for settlement administration;

(q)  provide equal advance notice to and communicate equally with the Plaintiffs and Dynata regarding all of the above-listed actions and in the event of any disagreements between Plaintiffs and Dynata about how to proceed, give fair and equal consideration to the positions and interests of the Plaintiffs and of Dynata.

6.  **Dynata's Duty to Fund Settlement**. If the Court grants the Approval Motion and enters the Dismissal, Dynata will, within 5 business days after the Court's granting of the Approval Motion and entry of the Dismissal become final, electronically transfer the total amount of Three Hundred Twenty-Six Thousand Five Hundred Dollars ($326,500.00) (the "Total Settlement Amount") to the Qualified Settlement Fund. The Court's granting of the Approval Motion and entry of the Dismissal will be considered final for purposes of this Agreement 30 days after the Court takes those actions if no appeal or motion for reconsideration has been filed and no other legal step to challenge the Court's action has been taken, and if any such legal step to challenge the Court's actions has been taken, the Court's actions will be considered final when all such legal steps have been finally and conclusively resolved in a way that validates the Court's actions. The Total Settlement Amount is an absolute, unconditional, all-inclusive cap on the financial obligations of Dynata and the "Dynata Releasees" in connection with the Action or this Agreement. All payments shall be made on a 1099 basis, as Dynata maintains it did not employ the Plaintiffs or Potential FLSA Claimants. The "Dynata Releasees" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, and (c) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a) and (b). Under no circumstances whatsoever will Dynata or any "Dynata Releasee" have any other obligation under this Agreement to pay any amount to or on behalf of any of the Potential FLSA Claimants, their counsel, the Settlement Administrator or any other person on account of or in connection with the Action (including the cross-appeals), any claims that were raised or could have been raised in the Action or any claims released in Section 8 below. The Plaintiffs' counsel will be solely responsible for paying any and all taxes on amounts paid to them pursuant to this Agreement. Each Potential FLSA Claimant will be solely responsible for paying any and all taxes on amounts paid to the Potential FLSA Claimant pursuant to this Agreement.

7.  **Calculation of Amount of Settlement Checks**. The Settlement Administrator will use the Shiftsmart Data to calculate the amount of each Potential FLSA Claimant's Settlement Check as follows.

Add the number of work weeks in which each Potential FLSA Claimant performed any Dynata-related work to obtain the "Total Claimant Work Weeks";

Divide $75,000 (plus any amount by which the settlement administration fees and expenses are less than $12,000) by the Total Claimant Work Weeks to obtain the "Per Work Week Amount";

For each Potential FLSA Claimant, multiply the Per Work Week Amount by the total number of full or partial work weeks in which the Potential FLSA Claimant performed any Dynata-related work to arrive at the Potential FLSA Claimant's "Individual Settlement Amount."

8.      **Limited Release of Claims By Davis, Bankston and Taylor**. Each Plaintiff (to avoid any doubt, per the definition in "Background" Section A on page 1 above, Yolanda Davis, Teneshia Bankston and Tiffany Taylor) hereby releases Dynata and the other "Released Parties" listed below from all claims of every kind through the date the Plaintiff signs this Agreement to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The "Released Parties" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, (c) Shiftsmart and (d) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a), (b) and (c).

The claims each Plaintiff is giving up by providing this release include, for example, all claims and rights in any way directly or indirectly arising from, or relating to the Plaintiff's:

        (a)      application to work as a Shiftsmart Partner, work as a Shiftsmart Partner and the ending of any work as a Shiftsmart Partner;

        (b)      performing surveys or other work or services for Dynata;

        (c)      pay, compensation, or benefits including any wages, hourly pay, salary, bonuses, commissions, overtime pay, equity, options, expenses, incentive pay, insurance, paid/unpaid leave, profit sharing, notice pay, or separation pay/benefits;

        (d)      any alleged violation of any federal, state or local law, rule, or regulation (as they may be amended from time to time) related to wage and hour issues, including, but not limited to: the Fair Labor Standards Act; the Equal Pay Act; and any similar or analogous state or local laws, rules or regulations.

9.      **Limited Release of Claims By Opt-ins and Other Potential FLSA Claimants**. By cashing, depositing, signing or otherwise using or negotiating a Settlement Check, each Potential FLSA Claimant who is not one of the Plaintiffs (as defined in "Background" Section A on page 1 above) will release all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The back of each Settlement Check will include the following release language:

        "VOID IF ALTERED OR NOT CASHED BEFORE _____, 2025 SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

5

"By cashing, depositing, signing or otherwise using or negotiating this check, I am releasing all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work I performed for Shiftsmart on Dynata-related projects."

The intent of this Agreement is that the releases by these Potential FLSA Claimants will have the same scope as the releases by the Plaintiffs set forth in Section 8, with the releases by these Potential FLSA Claimants described more concisely solely for practical, administrative reasons.

**10.    Media Public Statements**.  Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not: (1) issue a press release or otherwise notify the media about the terms of the Agreement; or (2) advertise or make any public statements in any manner, including but not limited to on any social media platform regarding any of the terms of the Agreement through written, recorded, or electronic communications. To the extent the Parties' counsel is contacted by the media about this Agreement, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a settlement subject to Court approval and that they have "no comment." Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel may not publicly discuss negotiation of the Agreement. In the event of any such breach or threatened breach, the non-breaching party shall, in addition to any other remedies available to it, be entitled to a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the breaching party from any actual or threatened breach. Notwithstanding the foregoing, Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Defendant's name (or their affiliates' names) or any information that would identify Defendant, in any promotional materials of the settlement. Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with members of the conditionally certified collective if and to the extent necessary to satisfy their fiduciary obligations as counsel. It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement if and to the extent necessary in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record. Plaintiffs' Counsel represent that none of them currently represents any current or former Shiftsmart Partners other than the Plaintiffs and Opt-In Plaintiffs in connection with any Dynata-related issue. The Confidential Tolling Agreement between Dynata and Yolanda Davis, Teneshia Banks and Tiffany Taylor dated November __, 2023 is hereby terminated.

**11.    Nondisparagement**. Plaintiffs agree not to make any disparaging statements about any of the Released Parties or their attorneys that are untrue and likely to be harmful to them or their business or their professional or personal reputation.

**12.    Third-party Beneficiaries**. The Released Parties are intended beneficiaries of Sections 9 through 12, 17, and 18 of this Agreement and may enforce those provisions on their own behalf.

**13.    [Intentionally Omitted**. Dynata and Plaintiffs agreed to omit a provision from a prior draft and include this sentence to avoid renumbering other paragraphs of the Agreement.]

316506027v.2
316751345v.1

14.     **No Other Attorneys' Fee Request**. None of the Plaintiffs or their counsel will seek any award, reimbursement or payment of attorneys' fees or costs relating to the Action or the Cross-Appeals, other than the payment to the Plaintiffs' counsel from the Qualified Settlement Fund referred to in Section 5(l) above.

15.     **No Tax Advice**. The Plaintiffs acknowledge that neither Dynata nor its counsel nor the Settlement Administrator has given or will give any of them any tax advice in connection with the Action, this Agreement or any payments to be made pursuant to this Agreement.

16.     **Inadmissibility of Agreement**. This Agreement shall not be offered or admitted in any action or proceeding as evidence of any wrongdoing by Dynata. Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

17.     **Severability**. Subject to Section 3, above, if any provision of this Agreement is found illegal, invalid, void or unenforceable, it shall be stricken and all other provisions shall remain in full force and effect.

**IN WITNESS WHEREOF**, the Plaintiffs and Dynata knowingly and voluntarily enter into this Amended Settlement Agreement:

Dated: _____, 2025

_____
YOLANDA DAVIS

Dated: _____, 2025

_____
TENESHIA BANKSTON

Dated: _____, 2025

_____
TIFFANY TAYLOR

Dated: _____, 2025

_____
DYN

By: ___*Steve Belkin*___
AC0268094045481...

Print Name: ___Steve Belkin___

Title: ___EVP, General Counsel___

316506027v.2
316751345v.1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

YOLANDA DAVIS, Individually, and on
behalf of other similarly situated,

             Plaintiffs,

     v.

DYNATA, LLC,

             Defendant.

Civil Action No. 3:22-cv-01062 (SVN)

**A United States District Court has approved this Notice of Settlement**

TO:   NAME
       ADDRESS
       ADDRESS

The lawsuit identified above is being settled.  You are being offered a settlement check.

The plaintiffs in the lawsuit claim that individuals who worked for Shiftsmart, Inc. ("Shiftsmart") on projects relating to Dynata, LLC ("Dynata") were Dynata employees and are owed compensation by Dynata.  Dynata denies that anyone who worked for Shiftsmart was a Dynata employee and denies that it owes any of them any compensation.

As part of a settlement of the lawsuit, Dynata is offering checks to certain people who worked for Shiftsmart on Dynata-related projects, including you.  Your settlement check is enclosed.  The amount of your check was based on the number of weeks you performed services through Shiftsmart on Dynata-related projects.

**Option 1:**  You may accept the settlement check by cashing or depositing it by _____, 2025.  If you accept the check, you will be releasing all claims against Shiftsmart, Dynata or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for your work for Shiftsmart  on Dynata-related projects.

**Option 2:**  You may destroy or discard the settlement check and not release any legal claims.

If you need more information, you may contact the Settlement Administrator at the following telephone number or email address: _____

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between: (a) Yolanda Davis, Teneshia Bankston, and Tiffany Taylor; and (b) Dynata, LLC ("Dynata" or "Defendant").

## BACKGROUND

A.     Yolanda Davis, Teneshia Bankston and Tiffany Taylor are the named plaintiffs in *Yolanda Davis, et. al. v. Dynata, LLC*, United States District Court for the District of Connecticut, Civil Action No. 3:22-cv-01062 (the "Action"). Tara Jones, Keshun Durban, Brittni Davis, Margaret Samantha Abernathy, Sasha Watson, Catera Duncan, and Alisa Charles ("Opt-in Plaintiffs") have opted-in to the Action as plaintiffs and in doing so expressly agreed to be bound by the decisions of the named plaintiffs, including this Agreement. The three named plaintiffs are referred to in this Agreement as the "Plaintiffs." Dynata is the defendant in the Action.

B.     The Action includes claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), violations of South Carolina statutory law, violations of Kentucky statutory law, and common law claims of breach of contract and unjust enrichment. In the Action, the Plaintiffs allege that they performed telephone surveys for Dynata through Shiftsmart, Inc. ("Shiftsmart") and seek to pursue claims on their own behalf and on behalf of other individuals who did so. Individuals who performed surveys for Dynata through Shiftsmart are referred to in this Agreement as "Shiftsmart Partners."

C.     Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

D.     On September 25, 2023, the United States District Court for the District of Connecticut (the "Court") ruled that some Shiftsmart Partners were required to arbitrate the types of claims asserted in the Action, while others were not. Shiftsmart and the Plaintiffs have filed cross-appeals to the United States Court of Appeals for the Second Circuit as to the Court's September 25, 2023 arbitration ruling (the "Cross-Appeals").

E.     On September 25, 2023, the Court also ruled that the Plaintiffs could bring their FLSA claims as a conditionally certified collective action on behalf of Shiftsmart Partners who both (1) reported performing 35 or more hours of Dynata-related work in at least one week and (2) were not required to arbitrate pursuant to the Court's September 25, 2023 arbitration ruling. This Agreement provides relief to Shiftsmart Partners who performed 35 or more hours of Dynata-related work in at least one week.

F.     The Plaintiffs and Dynata have had arms-length discussions through counsel regarding possible settlement of the Action. The Plaintiffs and Dynata have received and evaluated data from Shiftsmart regarding the number of shifts worked by and amounts paid to Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week. Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week, and the Plaintiffs regardless of their weekly hours, are referred to collectively in this Agreement as "Potential FLSA Claimants."

In light of this background and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the Plaintiffs and Dynata HEREBY AGREE as follows.

## TERMS AND CONDITIONS

**1.    Seeking Court Approval.** Within 28 days after the date that this Agreement is signed by the Plaintiffs and Dynata, the Plaintiffs will file a motion (the "Approval Motion") requesting that the Court: (1) approve this Agreement as fair, adequate, and reasonable in all respects; and (2) enter judgment dismissing the Action with prejudice as to all claims and all parties, with all parties bearing their own costs, except as provided herein, and all rights of appeal waived (the "Dismissal"). If the Plaintiffs, before filing the Approval Motion, provide Dynata at least three business days to review it and cooperate in good faith to address any legitimate objections Dynata may have, Dynata will not oppose the Approval Motion. Dynata does not oppose Plaintiffs' request for incentive awards, attorney fees, litigation costs, or settlement administration expenses, as provided herein. The Plaintiffs will take (and if needed Dynata will cooperate in) any steps required to ensure the Court's jurisdiction (notwithstanding the cross-appeals to the United States Court of Appeals for the Second Circuit) to grant the Approval Motion and enter the Dismissal.

**2.    Duties Upon Court Approval.** If the Court grants the Approval Motion and enters the Dismissal: (a) the Plaintiffs and Dynata will jointly obtain any additional data or contact information from Shiftsmart to effectuate this Agreement, as stated in Section 4 below; (b) the Plaintiffs will engage a settlement administrator and cause the settlement administrator to take certain actions, as stated in Section 5 below; (c) the Plaintiffs will take (and if needed Dynata will cooperate in) appropriate steps to ensure the dismissal of the Cross-Appeals as moot; and (d) Dynata will fund the settlement as stated in Section 6 below.

**3.    Effect of Failure to Obtain Court Approval.** This Agreement is contingent upon court-approval. If, for any reason, the Court does not approve the Agreement, then the Parties will continue negotiating in good faith to reach an Agreement that cures the deficiencies identified by the Court that led to non-approval of the Agreement. Dynata, however, shall not under any circumstances have any obligation to increase the total amount it pays in connection with the settlement beyond the Total Settlement Amount, as defined in Section 6 below.

**4.    Obtaining Additional Information and Data from Shiftsmart.** If the Court grants the Approval Motion, the Plaintiffs and Dynata will cooperate to cause Shiftsmart to produce to the Settlement Administrator, as defined in Section 5 below an Excel file containing additional information and data for each Potential FLSA Claimant (the "Shiftsmart Data") that is necessary to effectuate this settlement.

**5.    Engaging and Instructing Settlement Administrator.** If the Court grants the Approval Motion, the Plaintiffs will engage ILYM, Inc. (the "Settlement Administrator") as settlement administrator and cause the Settlement Administrator to take the following actions:

(a)    establish a Qualified Settlement Fund account pursuant to Section 468B(g) of the Internal Revenue Service Code;

2

(b)     cooperate with Dynata to enable Dynata to pay the "Total Settlement Amount" as defined in Section 6 below into the Qualified Settlement Fund;

(c)     review the Shiftsmart Data and notify the Plaintiffs and Dynata of any deficiencies;

(d)     calculate the amount of the settlement payment for each Potential FLSA Claimant in accordance with the instructions set forth in Section 7 below and provide the Plaintiffs and Dynata an opportunity to review the calculations and correct any errors;

(e)     use the United States Postal Service's National Change of Address database to update the mailing address stated in the Shiftsmart Data for each Potential FLSA Claimant;

(f)     send each Potential FLSA Claimant, by First Class U.S. Mail, the Notice that is attached to this Agreement ("Notice"), together with a check drawn upon the Qualified Settlement Fund in the amount of the Potential FLSA Claimant's settlement payment, with the limited release language set forth in Section 9 of this Agreement printed on the back of the check ("Settlement Check");

(g)     if a Notice and Settlement Check is returned as non-deliverable, use reasonable efforts, including skip-tracing if necessary, to obtain an updated mailing address and re-mail the Notice and Settlement Check to any updated address located.

(h)     notify the Plaintiffs and Dynata on a weekly basis through reports and as reasonably requested of the status of the participation rate and each Settlement Check;

(i)     void each Settlement Check that remains uncashed 90 days after it was issued;

(j)     send Dynata a copy of each endorsed Settlement Check, including the endorsement on the back of the Settlement Check;

(k)     pay the Plaintiffs from the Qualified Settlement Fund, in recognition of their work relating to the case, service awards totaling Nine Thousand Dollars ($9,000.00), allocated as follows: Yolanda Davis ($5,000.00), Teneshia Bankston ($2,000.00), and Tiffany Taylor ($2,000.00);

(l)     pay the Plaintiffs' counsel from the Qualified Settlement Fund a total amount of Two Hundred Thirty Thousand Five Hundred Dollars ($230,500.00), to cover the separately negotiated attorney fees and costs, divided among the four law firms who have appeared on behalf of the Plaintiffs in the Action in accordance with joint written instructions from the four law firms;

(m)     transfer up to Twelve Thousand Dollars ($12,000.00) from the Qualified Settlement Fund to its own account as payment for all settlement administration fees and expenses;

(n)    any funds remaining after the settlement administration fees and expenses are paid shall pour into the Qualified Settlement Fund and be allocated to the Potential FLSA Claimants;

(o)    comply with any and all tax reporting obligations with respect to all payments called for under this Agreement, with all payments treated as non-wages;

(p)    maintain a record of the Settlement Administrator's performance of the actions listed above in accordance with best practices for settlement administration;

(q)    provide equal advance notice to and communicate equally with the Plaintiffs and Dynata regarding all of the above-listed actions and in the event of any disagreements between Plaintiffs and Dynata about how to proceed, give fair and equal consideration to the positions and interests of the Plaintiffs and of Dynata.

**6.    Dynata's Duty to Fund Settlement**. If the Court grants the Approval Motion and enters the Dismissal, Dynata will, within 5 business days after the Court's granting of the Approval Motion and entry of the Dismissal become final, electronically transfer the total amount of Three Hundred Twenty-Six Thousand Five Hundred Dollars ($326,500.00) (the "Total Settlement Amount") to the Qualified Settlement Fund. The Court's granting of the Approval Motion and entry of the Dismissal will be considered final for purposes of this Agreement 30 days after the Court takes those actions if no appeal or motion for reconsideration has been filed and no other legal step to challenge the Court's action has been taken, and if any such legal step to challenge the Court's actions has been taken, the Court's actions will be considered final when all such legal steps have been finally and conclusively resolved in a way that validates the Court's actions. The Total Settlement Amount is an absolute, unconditional, all-inclusive cap on the financial obligations of Dynata and the "Dynata Releasees" in connection with the Action or this Agreement. All payments shall be made on a 1099 basis, as Dynata maintains it did not employ the Plaintiffs or Potential FLSA Claimants. The "Dynata Releasees" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, and (c) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a) and (b). Under no circumstances whatsoever will Dynata or any "Dynata Releasee" have any other obligation under this Agreement to pay any amount to or on behalf of any of the Potential FLSA Claimants, their counsel, the Settlement Administrator or any other person on account of or in connection with the Action (including the cross-appeals), any claims that were raised or could have been raised in the Action or any claims released in Section 8 below. The Plaintiffs' counsel will be solely responsible for paying any and all taxes on amounts paid to them pursuant to this Agreement. Each Potential FLSA Claimant will be solely responsible for paying any and all taxes on amounts paid to the Potential FLSA Claimant pursuant to this Agreement.

**7.    Calculation of Amount of Settlement Checks**. The Settlement Administrator will use the Shiftsmart Data to calculate the amount of each Potential FLSA Claimant's Settlement Check as follows.

Add the number of work weeks in which each Potential FLSA Claimant performed any Dynata-related work to obtain the "Total Claimant Work Weeks";

4

Divide $75,000 (plus any amount by which the settlement administration fees and expenses are less than $12,000) by the Total Claimant Work Weeks to obtain the "Per Work Week Amount";

For each Potential FLSA Claimant, multiply the Per Work Week Amount by the total number of full or partial work weeks in which the Potential FLSA Claimant performed any Dynata-related work to arrive at the Potential FLSA Claimant's "Individual Settlement Amount."

8.      **Limited Release of Claims By Davis, Bankston and Taylor**. Each Plaintiff (to avoid any doubt, per the definition in "Background" Section A on page 1 above, Yolanda Davis, Teneshia Bankston and Tiffany Taylor) hereby releases Dynata and the other "Released Parties" listed below from all claims of every kind through the date the Plaintiff signs this Agreement to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The "Released Parties" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, (c) Shiftsmart and (d) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a), (b) and (c).

The claims each Plaintiff is giving up by providing this release include, for example, all claims and rights in any way directly or indirectly arising from, or relating to the Plaintiff's:

        (a)      application to work as a Shiftsmart Partner, work as a Shiftsmart Partner and the ending of any work as a Shiftsmart Partner;

        (b)      performing surveys or other work or services for Dynata;

        (c)      pay, compensation, or benefits including any wages, hourly pay, salary, bonuses, commissions, overtime pay, equity, options, expenses, incentive pay, insurance, paid/unpaid leave, profit sharing, notice pay, or separation pay/benefits;

        (d)      any alleged violation of any federal, state or local law, rule, or regulation (as they may be amended from time to time) related to wage and hour issues, including, but not limited to: the Fair Labor Standards Act; the Equal Pay Act; and any similar or analogous state or local laws, rules or regulations.

9.      **Limited Release of Claims By Opt-ins and Other Potential FLSA Claimants**. By cashing, depositing, signing or otherwise using or negotiating a Settlement Check, each Potential FLSA Claimant who is not one of the Plaintiffs (as defined in "Background" Section A on page 1 above) will release all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The back of each Settlement Check will include the following release language:

        "VOID IF ALTERED OR NOT CASHED BEFORE _____, 2025 SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

5

"By cashing, depositing, signing or otherwise using or negotiating this check, I am releasing all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work I performed for Shiftsmart on Dynata-related projects."

The intent of this Agreement is that the releases by these Potential FLSA Claimants will have the same scope as the releases by the Plaintiffs set forth in Section 8, with the releases by these Potential FLSA Claimants described more concisely solely for practical, administrative reasons.

**10.** **Media Public Statements**.  Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not: (1) issue a press release or otherwise notify the media about the terms of the Agreement; or (2) advertise or make any public statements in any manner, including but not limited to on any social media platform regarding any of the terms of the Agreement through written, recorded, or electronic communications. To the extent the Parties' counsel is contacted by the media about this Agreement, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a settlement subject to Court approval and that they have "no comment." Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel may not publicly discuss negotiation of the Agreement. In the event of any such breach or threatened breach, the non-breaching party shall, in addition to any other remedies available to it, be entitled to a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the breaching party from any actual or threatened breach. Notwithstanding the foregoing, Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Defendant's name (or their affiliates' names) or any information that would identify Defendant, in any promotional materials of the settlement. Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with members of the conditionally certified collective if and to the extent necessary to satisfy their fiduciary obligations as counsel. It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement if and to the extent necessary in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record. Plaintiffs' Counsel represent that none of them currently represents any current or former Shiftsmart Partners other than the Plaintiffs and Opt-In Plaintiffs in connection with any Dynata-related issue. The Confidential Tolling Agreement between Dynata and Yolanda Davis, Teneshia Banks and Tiffany Taylor dated November __, 2023 is hereby terminated.

**11.** **Nondisparagement**. Plaintiffs agree not to make any disparaging statements about any of the Released Parties or their attorneys that are untrue and likely to be harmful to them or their business or their professional or personal reputation.

**12.** **Third-party Beneficiaries**. The Released Parties are intended beneficiaries of Sections 9 through 12, 17, and 18 of this Agreement and may enforce those provisions on their own behalf.

**13.** **[Intentionally Omitted**. Dynata and Plaintiffs agreed to omit a provision from a prior draft and include this sentence to avoid renumbering other paragraphs of the Agreement.]

316506027v.2
316751345v.1

**14.    No Other Attorneys' Fee Request**. None of the Plaintiffs or their counsel will seek any award, reimbursement or payment of attorneys' fees or costs relating to the Action or the Cross-Appeals, other than the payment to the Plaintiffs' counsel from the Qualified Settlement Fund referred to in Section 5(l) above.

**15.    No Tax Advice**. The Plaintiffs acknowledge that neither Dynata nor its counsel nor the Settlement Administrator has given or will give any of them any tax advice in connection with the Action, this Agreement or any payments to be made pursuant to this Agreement.

**16.    Inadmissibility of Agreement**. This Agreement shall not be offered or admitted in any action or proceeding as evidence of any wrongdoing by Dynata. Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

**17.    Severability**. Subject to Section 3, above, if any provision of this Agreement is found illegal, invalid, void or unenforceable, it shall be stricken and all other provisions shall remain in full force and effect.

**IN WITNESS WHEREOF**, the Plaintiffs and Dynata knowingly and voluntarily enter into this Amended Settlement Agreement:

Dated: _____, 2025

_____
YOLANDA DAVIS

Dated: _03/17/2025_____, 2025

_____
TENESHIA BANKSTON

Dated: _____, 2025

_____
TIFFANY TAYLOR

Dated: _____, 2025

_____
DYNATA, LLC

By: _____
Print Name: _____
Title: _____

7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

YOLANDA DAVIS, Individually, and on
behalf of other similarly situated,

               Plaintiffs,

      v.

DYNATA, LLC,

               Defendant.

Civil Action No. 3:22-cv-01062 (SVN)

**A United States District Court has approved this Notice of Settlement**

TO:    NAME
        ADDRESS
        ADDRESS

The lawsuit identified above is being settled.  You are being offered a settlement check.

The plaintiffs in the lawsuit claim that individuals who worked for Shiftsmart, Inc. ("Shiftsmart") on projects relating to Dynata, LLC ("Dynata") were Dynata employees and are owed compensation by Dynata.  Dynata denies that anyone who worked for Shiftsmart was a Dynata employee and denies that it owes any of them any compensation.

As part of a settlement of the lawsuit, Dynata is offering checks to certain people who worked for Shiftsmart on Dynata-related projects, including you.  Your settlement check is enclosed.  The amount of your check was based on the number of weeks you performed services through Shiftsmart on Dynata-related projects.

**Option 1:**  You may accept the settlement check by cashing or depositing it by _____, 2025.  If you accept the check, you will be releasing all claims against Shiftsmart, Dynata or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for your work for Shiftsmart  on Dynata-related projects.

**Option 2:**  You may destroy or discard the settlement check and not release any legal claims.

If you need more information, you may contact the Settlement Administrator at the following telephone number or email address: _____

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between: (a) Yolanda Davis, Teneshia Bankston, and Tiffany Taylor; and (b) Dynata, LLC ("Dynata" or "Defendant").

## BACKGROUND

A.    Yolanda Davis, Teneshia Bankston and Tiffany Taylor are the named plaintiffs in *Yolanda Davis, et. al. v. Dynata, LLC*, United States District Court for the District of Connecticut, Civil Action No. 3:22-cv-01062 (the "Action"). Tara Jones, Keshun Durban, Brittni Davis, Margaret Samantha Abernathy, Sasha Watson, Catera Duncan, and Alisa Charles ("Opt-in Plaintiffs") have opted-in to the Action as plaintiffs and in doing so expressly agreed to be bound by the decisions of the named plaintiffs, including this Agreement. The three named plaintiffs are referred to in this Agreement as the "Plaintiffs." Dynata is the defendant in the Action.

B.    The Action includes claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), violations of South Carolina statutory law, violations of Kentucky statutory law, and common law claims of breach of contract and unjust enrichment. In the Action, the Plaintiffs allege that they performed telephone surveys for Dynata through Shiftsmart, Inc. ("Shiftsmart") and seek to pursue claims on their own behalf and on behalf of other individuals who did so. Individuals who performed surveys for Dynata through Shiftsmart are referred to in this Agreement as "Shiftsmart Partners."

C.    Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

D.    On September 25, 2023, the United States District Court for the District of Connecticut (the "Court") ruled that some Shiftsmart Partners were required to arbitrate the types of claims asserted in the Action, while others were not. Shiftsmart and the Plaintiffs have filed cross-appeals to the United States Court of Appeals for the Second Circuit as to the Court's September 25, 2023 arbitration ruling (the "Cross-Appeals").

E.    On September 25, 2023, the Court also ruled that the Plaintiffs could bring their FLSA claims as a conditionally certified collective action on behalf of Shiftsmart Partners who both (1) reported performing 35 or more hours of Dynata-related work in at least one week and (2) were not required to arbitrate pursuant to the Court's September 25, 2023 arbitration ruling. This Agreement provides relief to Shiftsmart Partners who performed 35 or more hours of Dynata-related work in at least one week.

F.    The Plaintiffs and Dynata have had arms-length discussions through counsel regarding possible settlement of the Action. The Plaintiffs and Dynata have received and evaluated data from Shiftsmart regarding the number of shifts worked by and amounts paid to Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week. Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week, and the Plaintiffs regardless of their weekly hours, are referred to collectively in this Agreement as "Potential FLSA Claimants."

In light of this background and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the Plaintiffs and Dynata HEREBY AGREE as follows.

## TERMS AND CONDITIONS

1.      **Seeking Court Approval.** Within 28 days after the date that this Agreement is signed by the Plaintiffs and Dynata, the Plaintiffs will file a motion (the "Approval Motion") requesting that the Court: (1) approve this Agreement as fair, adequate, and reasonable in all respects; and (2) enter judgment dismissing the Action with prejudice as to all claims and all parties, with all parties bearing their own costs, except as provided herein, and all rights of appeal waived (the "Dismissal"). If the Plaintiffs, before filing the Approval Motion, provide Dynata at least three business days to review it and cooperate in good faith to address any legitimate objections Dynata may have, Dynata will not oppose the Approval Motion. Dynata does not oppose Plaintiffs' request for incentive awards, attorney fees, litigation costs, or settlement administration expenses, as provided herein. The Plaintiffs will take (and if needed Dynata will cooperate in) any steps required to ensure the Court's jurisdiction (notwithstanding the cross-appeals to the United States Court of Appeals for the Second Circuit) to grant the Approval Motion and enter the Dismissal.

2.      **Duties Upon Court Approval.** If the Court grants the Approval Motion and enters the Dismissal: (a) the Plaintiffs and Dynata will jointly obtain any additional data or contact information from Shiftsmart to effectuate this Agreement, as stated in Section 4 below; (b) the Plaintiffs will engage a settlement administrator and cause the settlement administrator to take certain actions, as stated in Section 5 below; (c) the Plaintiffs will take (and if needed Dynata will cooperate in) appropriate steps to ensure the dismissal of the Cross-Appeals as moot; and (d) Dynata will fund the settlement as stated in Section 6 below.

3.      **Effect of Failure to Obtain Court Approval.** This Agreement is contingent upon court-approval. If, for any reason, the Court does not approve the Agreement, then the Parties will continue negotiating in good faith to reach an Agreement that cures the deficiencies identified by the Court that led to non-approval of the Agreement. Dynata, however, shall not under any circumstances have any obligation to increase the total amount it pays in connection with the settlement beyond the Total Settlement Amount, as defined in Section 6 below.

4.      **Obtaining Additional Information and Data from Shiftsmart.** If the Court grants the Approval Motion, the Plaintiffs and Dynata will cooperate to cause Shiftsmart to produce to the Settlement Administrator, as defined in Section 5 below an Excel file containing additional information and data for each Potential FLSA Claimant (the "Shiftsmart Data") that is necessary to effectuate this settlement.

5.      **Engaging and Instructing Settlement Administrator.** If the Court grants the Approval Motion, the Plaintiffs will engage ILYM, Inc. (the "Settlement Administrator") as settlement administrator and cause the Settlement Administrator to take the following actions:

(a)      establish a Qualified Settlement Fund account pursuant to Section 468B(g) of the Internal Revenue Service Code;

316506027v.2
316751345v.1

(b)    cooperate with Dynata to enable Dynata to pay the "Total Settlement Amount" as defined in Section 6 below into the Qualified Settlement Fund;

(c)    review the Shiftsmart Data and notify the Plaintiffs and Dynata of any deficiencies;

(d)    calculate the amount of the settlement payment for each Potential FLSA Claimant in accordance with the instructions set forth in Section 7 below and provide the Plaintiffs and Dynata an opportunity to review the calculations and correct any errors;

(e)    use the United States Postal Service's National Change of Address database to update the mailing address stated in the Shiftsmart Data for each Potential FLSA Claimant;

(f)    send each Potential FLSA Claimant, by First Class U.S. Mail, the Notice that is attached to this Agreement ("Notice"), together with a check drawn upon the Qualified Settlement Fund in the amount of the Potential FLSA Claimant's settlement payment, with the limited release language set forth in Section 9 of this Agreement printed on the back of the check ("Settlement Check");

(g)    if a Notice and Settlement Check is returned as non-deliverable, use reasonable efforts, including skip-tracing if necessary, to obtain an updated mailing address and re-mail the Notice and Settlement Check to any updated address located.

(h)    notify the Plaintiffs and Dynata on a weekly basis through reports and as reasonably requested of the status of the participation rate and each Settlement Check;

(i)    void each Settlement Check that remains uncashed 90 days after it was issued;

(j)    send Dynata a copy of each endorsed Settlement Check, including the endorsement on the back of the Settlement Check;

(k)    pay the Plaintiffs from the Qualified Settlement Fund, in recognition of their work relating to the case, service awards totaling Nine Thousand Dollars ($9,000.00), allocated as follows: Yolanda Davis ($5,000.00), Teneshia Bankston ($2,000.00), and Tiffany Taylor ($2,000.00);

(l)    pay the Plaintiffs' counsel from the Qualified Settlement Fund a total amount of Two Hundred Thirty Thousand Five Hundred Dollars ($230,500.00), to cover the separately negotiated attorney fees and costs, divided among the four law firms who have appeared on behalf of the Plaintiffs in the Action in accordance with joint written instructions from the four law firms;

(m)    transfer up to Twelve Thousand Dollars ($12,000.00) from the Qualified Settlement Fund to its own account as payment for all settlement administration fees and expenses;

(n)    any funds remaining after the settlement administration fees and expenses are paid shall pour into the Qualified Settlement Fund and be allocated to the Potential FLSA Claimants;

(o)    comply with any and all tax reporting obligations with respect to all payments called for under this Agreement, with all payments treated as non-wages;

(p)    maintain a record of the Settlement Administrator's performance of the actions listed above in accordance with best practices for settlement administration;

(q)    provide equal advance notice to and communicate equally with the Plaintiffs and Dynata regarding all of the above-listed actions and in the event of any disagreements between Plaintiffs and Dynata about how to proceed, give fair and equal consideration to the positions and interests of the Plaintiffs and of Dynata.

**6.    Dynata's Duty to Fund Settlement**. If the Court grants the Approval Motion and enters the Dismissal, Dynata will, within 5 business days after the Court's granting of the Approval Motion and entry of the Dismissal become final, electronically transfer the total amount of Three Hundred Twenty-Six Thousand Five Hundred Dollars ($326,500.00) (the "Total Settlement Amount") to the Qualified Settlement Fund. The Court's granting of the Approval Motion and entry of the Dismissal will be considered final for purposes of this Agreement 30 days after the Court takes those actions if no appeal or motion for reconsideration has been filed and no other legal step to challenge the Court's action has been taken, and if any such legal step to challenge the Court's actions has been taken, the Court's actions will be considered final when all such legal steps have been finally and conclusively resolved in a way that validates the Court's actions. The Total Settlement Amount is an absolute, unconditional, all-inclusive cap on the financial obligations of Dynata and the "Dynata Releasees" in connection with the Action or this Agreement. All payments shall be made on a 1099 basis, as Dynata maintains it did not employ the Plaintiffs or Potential FLSA Claimants. The "Dynata Releasees" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, and (c) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a) and (b). Under no circumstances whatsoever will Dynata or any "Dynata Releasee" have any other obligation under this Agreement to pay any amount to or on behalf of any of the Potential FLSA Claimants, their counsel, the Settlement Administrator or any other person on account of or in connection with the Action (including the cross-appeals), any claims that were raised or could have been raised in the Action or any claims released in Section 8 below. The Plaintiffs' counsel will be solely responsible for paying any and all taxes on amounts paid to them pursuant to this Agreement. Each Potential FLSA Claimant will be solely responsible for paying any and all taxes on amounts paid to the Potential FLSA Claimant pursuant to this Agreement.

**7.    Calculation of Amount of Settlement Checks**. The Settlement Administrator will use the Shiftsmart Data to calculate the amount of each Potential FLSA Claimant's Settlement Check as follows.

Add the number of work weeks in which each Potential FLSA Claimant performed any Dynata-related work to obtain the "Total Claimant Work Weeks";

Divide $75,000 (plus any amount by which the settlement administration fees and expenses are less than $12,000) by the Total Claimant Work Weeks to obtain the "Per Work Week Amount";

For each Potential FLSA Claimant, multiply the Per Work Week Amount by the total number of full or partial work weeks in which the Potential FLSA Claimant performed any Dynata-related work to arrive at the Potential FLSA Claimant's "Individual Settlement Amount."

**8.      Limited Release of Claims By Davis, Bankston and Taylor**. Each Plaintiff (to avoid any doubt, per the definition in "Background" Section A on page 1 above, Yolanda Davis, Teneshia Bankston and Tiffany Taylor) hereby releases Dynata and the other "Released Parties" listed below from all claims of every kind through the date the Plaintiff signs this Agreement to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The "Released Parties" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, (c) Shiftsmart and (d) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a), (b) and (c).

The claims each Plaintiff is giving up by providing this release include, for example, all claims and rights in any way directly or indirectly arising from, or relating to the Plaintiff's:

      (a)      application to work as a Shiftsmart Partner, work as a Shiftsmart Partner and the ending of any work as a Shiftsmart Partner;

      (b)      performing surveys or other work or services for Dynata;

      (c)      pay, compensation, or benefits including any wages, hourly pay, salary, bonuses, commissions, overtime pay, equity, options, expenses, incentive pay, insurance, paid/unpaid leave, profit sharing, notice pay, or separation pay/benefits;

      (d)      any alleged violation of any federal, state or local law, rule, or regulation (as they may be amended from time to time) related to wage and hour issues, including, but not limited to: the Fair Labor Standards Act; the Equal Pay Act; and any similar or analogous state or local laws, rules or regulations.

**9.      Limited Release of Claims By Opt-ins and Other Potential FLSA Claimants**. By cashing, depositing, signing or otherwise using or negotiating a Settlement Check, each Potential FLSA Claimant who is not one of the Plaintiffs (as defined in "Background" Section A on page 1 above) will release all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The back of each Settlement Check will include the following release language:

      "VOID IF ALTERED OR NOT CASHED BEFORE _____, 2025 SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

316506027v.2
316751345v.1

"By cashing, depositing, signing or otherwise using or negotiating this check, I am releasing all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work I performed for Shiftsmart on Dynata-related projects."

The intent of this Agreement is that the releases by these Potential FLSA Claimants will have the same scope as the releases by the Plaintiffs set forth in Section 8, with the releases by these Potential FLSA Claimants described more concisely solely for practical, administrative reasons.

10.    **Media Public Statements**.    Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not: (1) issue a press release or otherwise notify the media about the terms of the Agreement; or (2) advertise or make any public statements in any manner, including but not limited to on any social media platform regarding any of the terms of the Agreement through written, recorded, or electronic communications. To the extent the Parties' counsel is contacted by the media about this Agreement, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a settlement subject to Court approval and that they have "no comment." Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel may not publicly discuss negotiation of the Agreement. In the event of any such breach or threatened breach, the non-breaching party shall, in addition to any other remedies available to it, be entitled to a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the breaching party from any actual or threatened breach. Notwithstanding the foregoing, Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Defendant's name (or their affiliates' names) or any information that would identify Defendant, in any promotional materials of the settlement. Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with members of the conditionally certified collective if and to the extent necessary to satisfy their fiduciary obligations as counsel. It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement if and to the extent necessary in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record. Plaintiffs' Counsel represent that none of them currently represents any current or former Shiftsmart Partners other than the Plaintiffs and Opt-In Plaintiffs in connection with any Dynata-related issue. The Confidential Tolling Agreement between Dynata and Yolanda Davis, Teneshia Banks and Tiffany Taylor dated November __, 2023 is hereby terminated.

11.    **Nondisparagement**. Plaintiffs agree not to make any disparaging statements about any of the Released Parties or their attorneys that are untrue and likely to be harmful to them or their business or their professional or personal reputation.

12.    **Third-party Beneficiaries**. The Released Parties are intended beneficiaries of Sections 9 through 12, 17, and 18 of this Agreement and may enforce those provisions on their own behalf.

13.    **[Intentionally Omitted**. Dynata and Plaintiffs agreed to omit a provision from a prior draft and include this sentence to avoid renumbering other paragraphs of the Agreement.]

6

**14.    No Other Attorneys' Fee Request**. None of the Plaintiffs or their counsel will seek any award, reimbursement or payment of attorneys' fees or costs relating to the Action or the Cross-Appeals, other than the payment to the Plaintiffs' counsel from the Qualified Settlement Fund referred to in Section 5(l) above.

**15.    No Tax Advice**. The Plaintiffs acknowledge that neither Dynata nor its counsel nor the Settlement Administrator has given or will give any of them any tax advice in connection with the Action, this Agreement or any payments to be made pursuant to this Agreement.

**16.    Inadmissibility of Agreement**. This Agreement shall not be offered or admitted in any action or proceeding as evidence of any wrongdoing by Dynata. Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

**17.    Severability**. Subject to Section 3, above, if any provision of this Agreement is found illegal, invalid, void or unenforceable, it shall be stricken and all other provisions shall remain in full force and effect.

**IN WITNESS WHEREOF**, the Plaintiffs and Dynata knowingly and voluntarily enter into this Amended Settlement Agreement:


Dated: _____, 2025     _____
                                        YOLANDA DAVIS


Dated: _____, 2025     _____
                                        TENESHIA BANKSTON


Dated: 03/17/2025 _____, 2025     _____
                                        TIFFANY TAYLOR


Dated: _____, 2025     _____
                                        DYNATA, LLC

                                        By: _____
                                        Print Name: _____
                                        Title: _____

316506027v.2
316751345v.1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

YOLANDA DAVIS, Individually, and on
behalf of other similarly situated,

          Plaintiffs,

      v.

DYNATA, LLC,

          Defendant.

Civil Action No. 3:22-cv-01062 (SVN)

**A United States District Court has approved this Notice of Settlement**

TO:    NAME
        ADDRESS
        ADDRESS

The lawsuit identified above is being settled.  You are being offered a settlement check.

The plaintiffs in the lawsuit claim that individuals who worked for Shiftsmart, Inc. ("Shiftsmart") on projects relating to Dynata, LLC ("Dynata") were Dynata employees and are owed compensation by Dynata.  Dynata denies that anyone who worked for Shiftsmart was a Dynata employee and denies that it owes any of them any compensation.

As part of a settlement of the lawsuit, Dynata is offering checks to certain people who worked for Shiftsmart on Dynata-related projects, including you.  Your settlement check is enclosed.  The amount of your check was based on the number of weeks you performed services through Shiftsmart on Dynata-related projects.

**Option 1:**  You may accept the settlement check by cashing or depositing it by _____, 2025.  If you accept the check, you will be releasing all claims against Shiftsmart, Dynata or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for your work for Shiftsmart  on Dynata-related projects.

**Option 2:**  You may destroy or discard the settlement check and not release any legal claims.

If you need more information, you may contact the Settlement Administrator at the following telephone number or email address: _____

## AMENDED SETTLEMENT AGREEMENT

This Amended Settlement Agreement ("Agreement") is entered into by and between: (a) Yolanda Davis, Teneshia Bankston, and Tiffany Taylor; and (b) Dynata, LLC ("Dynata" or "Defendant").

## BACKGROUND

A.     Yolanda Davis, Teneshia Bankston and Tiffany Taylor are the named plaintiffs in *Yolanda Davis, et. al. v. Dynata, LLC*, United States District Court for the District of Connecticut, Civil Action No. 3:22-cv-01062 (the "Action"). Tara Jones, Keshun Durban, Brittni Davis, Margaret Samantha Abernathy, Sasha Watson, Catera Duncan, and Alisa Charles ("Opt-in Plaintiffs") have opted-in to the Action as plaintiffs and in doing so expressly agreed to be bound by the decisions of the named plaintiffs, including this Agreement. The three named plaintiffs are referred to in this Agreement as the "Plaintiffs." Dynata is the defendant in the Action.

B.     The Action includes claims for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), violations of South Carolina statutory law, violations of Kentucky statutory law, and common law claims of breach of contract and unjust enrichment. In the Action, the Plaintiffs allege that they performed telephone surveys for Dynata through Shiftsmart, Inc. ("Shiftsmart") and seek to pursue claims on their own behalf and on behalf of other individuals who did so. Individuals who performed surveys for Dynata through Shiftsmart are referred to in this Agreement as "Shiftsmart Partners."

C.     Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

D.     On September 25, 2023, the United States District Court for the District of Connecticut (the "Court") ruled that some Shiftsmart Partners were required to arbitrate the types of claims asserted in the Action, while others were not. Shiftsmart and the Plaintiffs have filed cross-appeals to the United States Court of Appeals for the Second Circuit as to the Court's September 25, 2023 arbitration ruling (the "Cross-Appeals").

E.     On September 25, 2023, the Court also ruled that the Plaintiffs could bring their FLSA claims as a conditionally certified collective action on behalf of Shiftsmart Partners who both (1) reported performing 35 or more hours of Dynata-related work in at least one week and (2) were not required to arbitrate pursuant to the Court's September 25, 2023 arbitration ruling. This Agreement provides relief to Shiftsmart Partners who performed 35 or more hours of Dynata-related work in at least one week.

F.     The Plaintiffs and Dynata have had arms-length discussions through counsel regarding possible settlement of the Action. The Plaintiffs and Dynata have received and evaluated data from Shiftsmart regarding the number of shifts worked by and amounts paid to Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week. Shiftsmart Partners who reported performing 35 or more hours of Dynata-related work in at least one week, and the Plaintiffs regardless of their weekly hours, are referred to collectively in this Agreement as "Potential FLSA Claimants."

In light of this background and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the Plaintiffs and Dynata HEREBY AGREE as follows.

## TERMS AND CONDITIONS

1.      **Seeking Court Approval.** Within 28 days after the date that this Agreement is signed by the Plaintiffs and Dynata, the Plaintiffs will file a motion (the "Approval Motion") requesting that the Court: (1) approve this Agreement as fair, adequate, and reasonable in all respects; and (2) enter judgment dismissing the Action with prejudice as to all claims and all parties, with all parties bearing their own costs, except as provided herein, and all rights of appeal waived (the "Dismissal"). If the Plaintiffs, before filing the Approval Motion, provide Dynata at least three business days to review it and cooperate in good faith to address any legitimate objections Dynata may have, Dynata will not oppose the Approval Motion. Dynata does not oppose Plaintiffs' request for incentive awards, attorney fees, litigation costs, or settlement administration expenses, as provided herein. The Plaintiffs will take (and if needed Dynata will cooperate in) any steps required to ensure the Court's jurisdiction (notwithstanding the cross-appeals to the United States Court of Appeals for the Second Circuit) to grant the Approval Motion and enter the Dismissal.

2.      **Duties Upon Court Approval.** If the Court grants the Approval Motion and enters the Dismissal: (a) the Plaintiffs and Dynata will jointly obtain any additional data or contact information from Shiftsmart to effectuate this Agreement, as stated in Section 4 below; (b) the Plaintiffs will engage a settlement administrator and cause the settlement administrator to take certain actions, as stated in Section 5 below; (c) the Plaintiffs will take (and if needed Dynata will cooperate in) appropriate steps to ensure the dismissal of the Cross-Appeals as moot; and (d) Dynata will fund the settlement as stated in Section 6 below.

3.      **Effect of Failure to Obtain Court Approval.** This Agreement is contingent upon court-approval. If, for any reason, the Court does not approve the Agreement, then the Parties will continue negotiating in good faith to reach an Agreement that cures the deficiencies identified by the Court that led to non-approval of the Agreement. Dynata, however, shall not under any circumstances have any obligation to increase the total amount it pays in connection with the settlement beyond the Total Settlement Amount, as defined in Section 6 below.

4.      **Obtaining Additional Information and Data from Shiftsmart.** If the Court grants the Approval Motion, the Plaintiffs and Dynata will cooperate to cause Shiftsmart to produce to the Settlement Administrator, as defined in Section 5 below an Excel file containing additional information and data for each Potential FLSA Claimant (the "Shiftsmart Data") that is necessary to effectuate this settlement.

5.      **Engaging and Instructing Settlement Administrator.** If the Court grants the Approval Motion, the Plaintiffs will engage ILYM, Inc. (the "Settlement Administrator") as settlement administrator and cause the Settlement Administrator to take the following actions:

(a)      establish a Qualified Settlement Fund account pursuant to Section 468B(g) of the Internal Revenue Service Code;

2

(b)    cooperate with Dynata to enable Dynata to pay the "Total Settlement Amount" as defined in Section 6 below into the Qualified Settlement Fund;

(c)    review the Shiftsmart Data and notify the Plaintiffs and Dynata of any deficiencies;

(d)    calculate the amount of the settlement payment for each Potential FLSA Claimant in accordance with the instructions set forth in Section 7 below and provide the Plaintiffs and Dynata an opportunity to review the calculations and correct any errors;

(e)    use the United States Postal Service's National Change of Address database to update the mailing address stated in the Shiftsmart Data for each Potential FLSA Claimant;

(f)    send each Potential FLSA Claimant, by First Class U.S. Mail, the Notice that is attached to this Agreement ("Notice"), together with a check drawn upon the Qualified Settlement Fund in the amount of the Potential FLSA Claimant's settlement payment, with the limited release language set forth in Section 9 of this Agreement printed on the back of the check ("Settlement Check");

(g)    if a Notice and Settlement Check is returned as non-deliverable, use reasonable efforts, including skip-tracing if necessary, to obtain an updated mailing address and re-mail the Notice and Settlement Check to any updated address located.

(h)    notify the Plaintiffs and Dynata on a weekly basis through reports and as reasonably requested of the status of the participation rate and each Settlement Check;

(i)    void each Settlement Check that remains uncashed 90 days after it was issued;

(j)    send Dynata a copy of each endorsed Settlement Check, including the endorsement on the back of the Settlement Check;

(k)    pay the Plaintiffs from the Qualified Settlement Fund, in recognition of their work relating to the case, service awards totaling Nine Thousand Dollars ($9,000.00), allocated as follows: Yolanda Davis ($5,000.00), Teneshia Bankston ($2,000.00), and Tiffany Taylor ($2,000.00);

(l)    pay the Plaintiffs' counsel from the Qualified Settlement Fund a total amount of Two Hundred Thirty Thousand Five Hundred Dollars ($230,500.00), to cover the separately negotiated attorney fees and costs, divided among the four law firms who have appeared on behalf of the Plaintiffs in the Action in accordance with joint written instructions from the four law firms;

(m)    transfer up to Twelve Thousand Dollars ($12,000.00) from the Qualified Settlement Fund to its own account as payment for all settlement administration fees and expenses;

(n)    any funds remaining after the settlement administration fees and expenses are paid shall pour into the Qualified Settlement Fund and be allocated to the Potential FLSA Claimants;

(o)    comply with any and all tax reporting obligations with respect to all payments called for under this Agreement, with all payments treated as non-wages;

(p)    maintain a record of the Settlement Administrator's performance of the actions listed above in accordance with best practices for settlement administration;

(q)    provide equal advance notice to and communicate equally with the Plaintiffs and Dynata regarding all of the above-listed actions and in the event of any disagreements between Plaintiffs and Dynata about how to proceed, give fair and equal consideration to the positions and interests of the Plaintiffs and of Dynata.

**6.    Dynata's Duty to Fund Settlement**. If the Court grants the Approval Motion and enters the Dismissal, Dynata will, within 5 business days after the Court's granting of the Approval Motion and entry of the Dismissal become final, electronically transfer the total amount of Three Hundred Twenty-Six Thousand Five Hundred Dollars ($326,500.00) (the "Total Settlement Amount") to the Qualified Settlement Fund. The Court's granting of the Approval Motion and entry of the Dismissal will be considered final for purposes of this Agreement 30 days after the Court takes those actions if no appeal or motion for reconsideration has been filed and no other legal step to challenge the Court's action has been taken, and if any such legal step to challenge the Court's actions has been taken, the Court's actions will be considered final when all such legal steps have been finally and conclusively resolved in a way that validates the Court's actions. The Total Settlement Amount is an absolute, unconditional, all-inclusive cap on the financial obligations of Dynata and the "Dynata Releasees" in connection with the Action or this Agreement. All payments shall be made on a 1099 basis, as Dynata maintains it did not employ the Plaintiffs or Potential FLSA Claimants. The "Dynata Releasees" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, and (c) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a) and (b). Under no circumstances whatsoever will Dynata or any "Dynata Releasee" have any other obligation under this Agreement to pay any amount to or on behalf of any of the Potential FLSA Claimants, their counsel, the Settlement Administrator or any other person on account of or in connection with the Action (including the cross-appeals), any claims that were raised or could have been raised in the Action or any claims released in Section 8 below. The Plaintiffs' counsel will be solely responsible for paying any and all taxes on amounts paid to them pursuant to this Agreement. Each Potential FLSA Claimant will be solely responsible for paying any and all taxes on amounts paid to the Potential FLSA Claimant pursuant to this Agreement.

**7.    Calculation of Amount of Settlement Checks**. The Settlement Administrator will use the Shiftsmart Data to calculate the amount of each Potential FLSA Claimant's Settlement Check as follows.

Add the number of work weeks in which each Potential FLSA Claimant performed any Dynata-related work to obtain the "Total Claimant Work Weeks";

4

Divide $75,000 (plus any amount by which the settlement administration fees and expenses are less than $12,000) by the Total Claimant Work Weeks to obtain the "Per Work Week Amount";

For each Potential FLSA Claimant, multiply the Per Work Week Amount by the total number of full or partial work weeks in which the Potential FLSA Claimant performed any Dynata-related work to arrive at the Potential FLSA Claimant's "Individual Settlement Amount."

**8.     Limited Release of Claims By Davis, Bankston and Taylor**. Each Plaintiff (to avoid any doubt, per the definition in "Background" Section A on page 1 above, Yolanda Davis, Teneshia Bankston and Tiffany Taylor) hereby releases Dynata and the other "Released Parties" listed below from all claims of every kind through the date the Plaintiff signs this Agreement to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The "Released Parties" are: (a) Dynata, (b) Dynata's parents, subsidiaries, predecessors, successors, affiliates and employee benefit plans, (c) Shiftsmart and (d) the former and current directors, officers, employees, trustees, members, managers, shareholders, agents, representatives, and attorneys of the entities identified in (a), (b) and (c).

The claims each Plaintiff is giving up by providing this release include, for example, all claims and rights in any way directly or indirectly arising from, or relating to the Plaintiff's:

  (a) application to work as a Shiftsmart Partner, work as a Shiftsmart Partner and the ending of any work as a Shiftsmart Partner;

  (b) performing surveys or other work or services for Dynata;

  (c) pay, compensation, or benefits including any wages, hourly pay, salary, bonuses, commissions, overtime pay, equity, options, expenses, incentive pay, insurance, paid/unpaid leave, profit sharing, notice pay, or separation pay/benefits;

  (d) any alleged violation of any federal, state or local law, rule, or regulation (as they may be amended from time to time) related to wage and hour issues, including, but not limited to: the Fair Labor Standards Act; the Equal Pay Act; and any similar or analogous state or local laws, rules or regulations.

**9.     Limited Release of Claims By Opt-ins and Other Potential FLSA Claimants**. By cashing, depositing, signing or otherwise using or negotiating a Settlement Check, each Potential FLSA Claimant who is not one of the Plaintiffs (as defined in "Background" Section A on page 1 above) will release all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work performed for Shiftsmart on Dynata-related projects. The back of each Settlement Check will include the following release language:

  "VOID IF ALTERED OR NOT CASHED BEFORE _____, 2025 SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

5

"By cashing, depositing, signing or otherwise using or negotiating this check, I am releasing all claims against Shiftsmart, Inc., Dynata, LLC or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for any work I performed for Shiftsmart on Dynata-related projects."

The intent of this Agreement is that the releases by these Potential FLSA Claimants will have the same scope as the releases by the Plaintiffs set forth in Section 8, with the releases by these Potential FLSA Claimants described more concisely solely for practical, administrative reasons.

10.    **Media Public Statements**.    Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not: (1) issue a press release or otherwise notify the media about the terms of the Agreement; or (2) advertise or make any public statements in any manner, including but not limited to on any social media platform regarding any of the terms of the Agreement through written, recorded, or electronic communications. To the extent the Parties' counsel is contacted by the media about this Agreement, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a settlement subject to Court approval and that they have "no comment." Plaintiffs, Opt-in Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel may not publicly discuss negotiation of the Agreement. In the event of any such breach or threatened breach, the non-breaching party shall, in addition to any other remedies available to it, be entitled to a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the breaching party from any actual or threatened breach. Notwithstanding the foregoing, Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Defendant's name (or their affiliates' names) or any information that would identify Defendant, in any promotional materials of the settlement. Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with members of the conditionally certified collective if and to the extent necessary to satisfy their fiduciary obligations as counsel. It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement if and to the extent necessary in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record. Plaintiffs' Counsel represent that none of them currently represents any current or former Shiftsmart Partners other than the Plaintiffs and Opt-In Plaintiffs in connection with any Dynata-related issue. The Confidential Tolling Agreement between Dynata and Yolanda Davis, Teneshia Banks and Tiffany Taylor dated November __, 2023 is hereby terminated.

11.    **Nondisparagement**. Plaintiffs agree not to make any disparaging statements about any of the Released Parties or their attorneys that are untrue and likely to be harmful to them or their business or their professional or personal reputation.

12.    **Third-party Beneficiaries**. The Released Parties are intended beneficiaries of Sections 9 through 12, 17, and 18 of this Agreement and may enforce those provisions on their own behalf.

13.    **[Intentionally Omitted**. Dynata and Plaintiffs agreed to omit a provision from a prior draft and include this sentence to avoid renumbering other paragraphs of the Agreement.]

**14.    No Other Attorneys' Fee Request**. None of the Plaintiffs or their counsel will seek any award, reimbursement or payment of attorneys' fees or costs relating to the Action or the Cross-Appeals, other than the payment to the Plaintiffs' counsel from the Qualified Settlement Fund referred to in Section 5(l) above.

**15.    No Tax Advice**. The Plaintiffs acknowledge that neither Dynata nor its counsel nor the Settlement Administrator has given or will give any of them any tax advice in connection with the Action, this Agreement or any payments to be made pursuant to this Agreement.

**16.    Inadmissibility of Agreement**. This Agreement shall not be offered or admitted in any action or proceeding as evidence of any wrongdoing by Dynata. Dynata denies that any of the Shiftsmart Partners were ever Dynata employees, denies that any of the claims in the Action has merit and denies that it owes any of the Shiftsmart Partners anything.

**17.    Severability**. Subject to Section 3, above, if any provision of this Agreement is found illegal, invalid, void or unenforceable, it shall be stricken and all other provisions shall remain in full force and effect.

**IN WITNESS WHEREOF**, the Plaintiffs and Dynata knowingly and voluntarily enter into this Amended Settlement Agreement:

Dated: _03/17/2025_____, 2025          _____
                                          YOLANDA DAVIS


Dated: _____, 2025          _____
                                          TENESHIA BANKSTON


Dated: _____, 2025          _____
                                          TIFFANY TAYLOR


Dated: _____, 2025          _____
                                          DYNATA, LLC

                                          By: _____
                                          Print Name: _____
                                          Title: _____

316506027v.2
316751345v.1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

YOLANDA DAVIS, Individually, and on
behalf of other similarly situated,

                 Plaintiffs,

     v.

DYNATA, LLC,

                 Defendant.

Civil Action No. 3:22-cv-01062 (SVN)

**A United States District Court has approved this Notice of Settlement**

TO:    NAME
        ADDRESS
        ADDRESS

The lawsuit identified above is being settled.  You are being offered a settlement check.

The plaintiffs in the lawsuit claim that individuals who worked for Shiftsmart, Inc. ("Shiftsmart") on projects relating to Dynata, LLC ("Dynata") were Dynata employees and are owed compensation by Dynata.  Dynata denies that anyone who worked for Shiftsmart was a Dynata employee and denies that it owes any of them any compensation.

As part of a settlement of the lawsuit, Dynata is offering checks to certain people who worked for Shiftsmart on Dynata-related projects, including you.  Your settlement check is enclosed.  The amount of your check was based on the number of weeks you performed services through Shiftsmart on Dynata-related projects.

**Option 1:**  You may accept the settlement check by cashing or depositing it by _____, 2025.  If you accept the check, you will be releasing all claims against Shiftsmart, Dynata or any related person or company, to the extent the claims arise from or relate in any way to pay, compensation, hours of work, or keeping of records, for your work for Shiftsmart  on Dynata-related projects.

**Option 2:**  You may destroy or discard the settlement check and not release any legal claims.

If you need more information, you may contact the Settlement Administrator at the following telephone number or email address: _____